[No. E002108. Fourth Dist., Div. Two. Oct. 11, 1985.]

CALIFORNIA CASUALTY GENERAL INSURANCE COMPANY et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
PAULA GORGEI, Real Party in Interest.

## Counsel

Bruggeman, Smith & Peckham and Stephen Miller for Petitioners.

No appearance for Respondent.

Miller, Madden & Theios, Olen G. Miller and John J. Madden, Jr., for Real Party in Interest.

## Opinion

**KAUFMAN, J.**—We issued an alternative writ of mandate to review an order of the San Bernardino Superior Court denying the motion of defendants below to amend their answer to the plaintiff's first amended complaint for "bad faith" to allege a fourth affirmative defense: "comparative bad faith."

### Facts

Paula Gorgei, real party here and plaintiff below, was the owner of an automobile insurance policy issued by California Casualty General Insurance Company providing uninsured motorist coverage. On December 2, 1981, plaintiff allegedly suffered a loss compensable under the uninsured motorist provisions of the policy. California Casualty declined to pay plaintiff's claim as a result of which plaintiff was allegedly required to pursue the matter to arbitration, resulting in an award favorable to plaintiff.

Sometime prior to January 23, 1984, plaintiff instituted this action to recover compensatory and punitive damages for, inter alia, defendants' alleged breach of the duty of good faith and fair dealing and breach of their statutory duties under the unfair practices act (Ins. Code, § 790.03 et seq.), fraud, and intentional infliction of emotional distress. In substance, plaintiff alleged in its first amended complaint filed January 23, 1984, that defendants failed to reasonably and promptly investigate and process plaintiff's claim; failed in good faith to effectuate a prompt, fair and equitable settle-

ment of plaintiff's claim as to which liability had become reasonably clear; and failed to pay plaintiff's claim notwithstanding their knowledge plaintiff was entitled to payment under the uninsured motorist provisions of the policy.

Defendants answered the first amended complaint on February 29, 1984, setting forth a general denial under Code of Civil Procedure section 431.30[1] and three affirmative defenses. The first affirmative defense alleged in essence: "Any injury or damages to plaintiff herein were proximately caused by the negligence of the plaintiff . . . ."

The second affirmative defense read in pertinent part: "The injuries and damages alleged by plaintiff, if any, were proximately caused by the negligence and liability of other parties, and defendants request that an allocation of such negligence and liability be made among such other parties, and that if any liability is found on the part of defendants, that judgment against defendants be only in the amount which is proportionate to the extent and percentage by which defendants' acts or omissions contributed to plaintiff's injuries or damages."

The third affirmative defense read: "The plaintiff's action was not brought in good faith and is frivolous, and by reason of the premises defendants are entitled to, and will seek, reasonable expenses, including attorney's fees, in defending the action, pursuant to *Code of Civil Procedure* Section 128.5."

On April 4, 1985, after unsuccessfully requesting plaintiff to stipulate that defendants' answer might so be amended, defendants filed a motion seeking leave to amend their answer to add a fourth affirmative defense, to read: "The plaintiff and her former attorney are guilty of bad faith conduct in the prosecuting, handling and management of the uninsured motorist claim referred to in plaintiff's First Amended Complaint and as a proximate cause of their bad faith acts, omissions and failure to provide full and complete information to the defendants and their insuror [*sic*], these defendants request that any damages awarded against them for bad faith be reduced by the amount of the bad faith conduct of plaintiff and her former attorney."

Plaintiff opposed defendants' motion to amend their answer asserting, in essence, that the proposed amendment was unnecessary because the proposed fourth affirmative defense was encompassed in the three affirmative

---

[1]Subdivision (d) of Code of Civil Procedure section 431.30 reads in pertinent part: "If the complaint is not verified, a general denial is sufficient but only puts in issue the material allegations of the complaint."

defenses already pleaded in defendants' answer and that, as a matter of substantive law, the proposed fourth affirmative defense did not state facts sufficient to constitute a defense. At the hearing on the motion, the court indicated it was inclined to agree with plaintiff that the proposed amendment failed to state a defense. It stated in relevant part: "I am inclined to think if it is subject to demurrer that I should deny the motion just to avoid multiplicity of court appearances, if nothing else." Nevertheless, the court took the matter under submission. On May 8, 1985, the court issued a minute order denying the motion to amend, without stating any particular ground for or otherwise explaining its ruling.

Defendants' position in this court may be summarized by reference to its quotation from *Morgan* v. *Superior Court* (1959) 172 Cal.App.2d 527, 530 [343 P.2d 62]: "While a motion to permit an amendment to a pleading to be filed is one addressed to the discretion of the court, the exercise of this discretion must be sound and reasonable and not arbitrary or capricious. (*Richter* v. *Adams,* 43 Cal.App.2d 184, 187 [110 P.2d 486]; *Eckert* v. *Graham,* 131 Cal.App. 718, 721 [22 P.2d 44].) And it is a rare case in which 'a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case.' (*Guidery* v. *Green,* 95 Cal. 630, 633 [30 P. 786]; *Marr* v. *Rhodes,* 131 Cal. 267, 270 [63 P. 364].) If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretion. (*Nelson* v. *Superior Court,* 97 Cal.App.2d 78 [217 P.2d 119]; *Estate of Herbst,* 26 Cal.App.2d 249 [79 P.2d 139]; *Norton* v. *Bassett,* 158 Cal. 425, 427 [111 P. 253].)"

For her part, plaintiff advances two principal contentions: that mandate is inappropriate because defendants have another remedy which is adequate; and that, in any event, no abuse of judicial discretion is manifest in the trial court's ruling.

■ It is our conclusion that under the circumstances here presented the trial court abused judicial discretion in denying defendants' motion to amend their answer.

*Discussion*

*Other Adequate Remedy*

Plaintiff's assertion that defendants have another adequate remedy so that mandate will not issue to command the trial court to permit them to amend

their answer is somewhat amusing. Plaintiff asserts that on or about May 20, 1985, after the trial court denied defendants' motion to amend their answer, defendants filed a cross-complaint for indemnity, contribution and declaratory relief against Stanley O. Orrock, the attorney who represented plaintiff in the uninsured motorist claim and arbitration proceeding, but who is not her attorney in the bad faith action. Plaintiff urges that that cross-complaint constitutes an otherwise adequate remedy. However, plaintiff immediately thereafter argues that the cross-complaint will not lie, citing *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 752-753 [134 Cal.Rptr. 422], and *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818, 821-822 [156 Cal.Rptr. 679] (but see *Parker* v. *Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197]). If, of course, plaintiff is correct that defendants may not cross-complain for indemnity against her former attorney, their cross-complaint can hardly be deemed an adequate remedy foreclosing a writ of mandate here. Moreover, because the cross-complaint against plaintiff's former attorney would not implicate plaintiff's own alleged bad faith conduct or reduce defendants' liability, if any, to the plaintiff, it could hardly be deemed an alternative remedy to defendants' amending their answer to assert plaintiff's comparative bad faith as a partial defense to plaintiff's recovery, if any.

 Finally, when we issued the alternative writ, we necessarily determined adversely to plaintiff the question of the existence of another adequate remedy. (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 543 [96 Cal.Rptr. 709, 488 P.2d 13].)

*Abuse of Discretion*

 We turn then to the question whether the trial court abused its discretion in denying defendants leave to amend.

Plaintiff quotes from *Hayutin* v. *Weintraub* (1962) 207 Cal.App.2d 497, 505-506 [24 Cal.Rptr. 761]: "Code of Civil Procedure section 473 authorizes the trial court to allow substantive amendments 'in its discretion.' The cases have established a policy of great liberality in allowing such amendments at any stage of the proceeding. (*Saari* v. *Superior Court,* 178 Cal.App.2d 175 [2 Cal.Rptr. 856]; *Legg* v. *Mutual Benefit etc. Assn.,* 162 Cal.App.2d 409 [327 P.2d 943]; *Youngblood* v. *City of Los Angeles,* 160 Cal.App.2d 481 [325 P.2d 587].) But when an order granting or denying leave to amend is attacked on appeal, another policy enters the picture— that the trial court's ruling should be upheld unless there is a clear abuse of discretion. [Citation.]"

Plaintiff then adverts to the rule that it is proper to deny leave to amend when the proposed amendment is insufficient to state a cause of action or defense. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1125, p. 541, and cases there cited.) Finally, plaintiff contends there is no authority recognizing "comparative bad faith" as a defense to an action for bad faith. She urges, therefore, the court's order denying defendants' motion to amend was appropriate because the proposed defense did not constitute a legally recognized defense or at the very most would constitute a "disfavored" defense. Paradoxically, at the same time plaintiff asserts that "the issue of 'comparative bad faith' as a defense is not before this court." She states: "The issue presented in the petition is whether or not the court abused its discretion in denying the motion to amend the answer. It is not the intent nor the attempt of the Real Party in Interest to expand this court's review of the petition beyond that question."

Notwithstanding plaintiff's protestations we fail to see how we can avoid the question of the substantive viability of the defense of "comparative bad faith." The court's order cannot be upheld on the basis of the procedural circumstances. The case was not one that had been pending for many years; defendants' efforts to amend their answer commenced within about one year after plaintiff filed her first amended complaint and within a few months after the decision in *Fleming* v. *Safeco Insurance Co.* (1984) 160 Cal.App.3d 31 [206 Cal.Rptr. 313], which it is said gave public recognition to the doctrine of "comparative bad faith" for the first time. (See fn. 2, *infra.*) As plaintiff herself urged in the trial court, the three affirmative defenses already set up by defendants in their original answer, broadly construed, might ·very well have been sufficient to encompass the defense of "comparative bad faith," so plaintiff could hardly have been unduly surprised or disadvantaged by defendants' request to amend their answer. And discovery in the action had not been completed; in fact, it was ongoing. Furthermore, the trial court gave no indication its ruling was based on any untimeliness in defendants' motion or any prejudice to plaintiff; on the contrary, it indicated it believed the proposed amendment would be subject to demurrer, presumably because as a matter of substantive law it would not constitute a defense. Thus, the argued lack of substantive vitality of the proffered defense appears to have been the basis for the court's ruling.

■ While the cases cited for the point are not overly explicit, we are confident Mr. Witkin is correct that the failure of a proposed amendment to state facts sufficient to constitute a cause of action or defense may support an order denying a motion to amend. (See 5 Witkin, *op. cit. supra,* Pleading, § 1125, and cases cited.) That rule would find its most appropriate application, however, in cases in which the insufficiency of the proposed

amendment is established by controlling precedent and where the insufficiency could not be cured by further appropriate amendment. When, as here, the legal sufficiency of the proposed defense is a novel question almost certain to be tested in an appellate court, the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate proceedings. Such proceeding might serve to develop the factual content of the proposed defense and to refine the language in which it is pleaded. Should a general demurrer ultimately be sustained to the proposed defense, the appellate court would at least be apprised of the ground on which the proposed defense was rejected (see Code Civ. Proc., § 430.60) and thus be in a position to focus its attention on the appropriate considerations on review. (Cf. *Weeks* v. *Roberts* (1968) 68 Cal.2d 802, 807 [69 Cal.Rptr. 305, 442 P.2d 361].) Happily, in the case at bench the trial court did at least indicate the probable basis for its ruling.

■ Plaintiff's assertion that the defense of "comparative bad faith" would constitute a "disfavored" defense is not persuasive and, indeed, is a bit puzzling. If, as plaintiffs seem to suggest, the fact that "comparative bad faith" has not been heretofore recognized in a published appellate opinion as a partial or complete defense to a bad faith action renders it a "disfavored" defense, we reject that suggestion.[2] Presumably, most defenses now recognized in tort cases were at one time novel and not expressly recognized in published judicial decisions. "Disfavored" defenses are such because of public policy considerations, not because they are novel.

In that vein, plaintiff does seem to make some connection between her "disfavored" characterization of the defense and the fact that defendants' proposed fourth affirmative defense referred not only to plaintiff's "bad faith conduct in the prosecuting, handling and management of the uninsured motorist claim" and her "failure to provide full and complete information to the defendants and their insuror [*sic*]," but also to plaintiff's former attorney's conduct in that regard, thus possibly implicating the policy considerations discussed in *Held* v. *Arant, supra,* 67 Cal.App.3d 748 and *Rowell* v. *TransPacific Life Ins. Co., supra,* 94 Cal.App.3d 818. One answer to the problem thus posed may be that because Attorney Orrock does not represent plaintiff in the pending action, the policy considerations discussed in the cited cases may not be germane. Another answer is that the reference to the conduct of plaintiff's former attorney was unnecessary to and could

---

[2]We do agree with plaintiff that *Fleming* v. *Safeco Insurance Co., supra,* 160 Cal.App.3d 31 did not signify judicial approval or recognition of the defense. In that case the defense was presented and determined by stipulation.

be well deleted from the proposed amendment to defendants' answer. In contradistinction to a claim for indemnity or contribution against a third party wrongdoer, plaintiff's damages, if any, could be diminished or defeated only on the basis of her bad faith conduct. Actions taken on her behalf by her authorized representatives, of course, might legally constitute her actions; however, the conduct of plaintiff's attorney not legally imputable to plaintiff could in no way diminish or defeat plaintiff's recovery, and there was no real purpose served by defendants' referring in the proposed fourth affirmative defense to the conduct of plaintiff's attorney if that was intended to refer to conduct not imputable to plaintiff. Presumably that is why defendants cross-complained against plaintiff's former attorney for indemnity or contribution, but, of course, the propriety of the cross-complaint against the attorney is not a question now before us.

Plaintiff sees in the recognition of the defense of "comparative bad faith" a number of evils, including interference with the attorney-client relationship and the necessity of the client's suing her attorney or former attorney should the "comparative bad faith" defense succeed in whole or part. However, plaintiff concedes that any evidence of undue delay on the part of the plaintiff's legal representative in presenting and prosecuting her claim or of her failure through her attorney to furnish the insurer in a timely fashion the information required to process and pay the claim would be admissible into evidence on the question of whether or not the insurer unreasonably delayed in investigating the claim or paying it. She further concedes, indeed argues, that such evidence would be considered by the factfinder in any event in assessing the amount of plaintiff's damages. We believe that if this evidence is to be considered in any event, as plaintiff suggests, it would be better for all concerned that that be done within the recognized framework of comparative fault principles rather than in some undisclosed, unprincipled and unguided fashion, known only to the factfinder.

Nor do we find the spectre of a later malpractice action particularly alarming. If the attorney is negligent in presenting or prosecuting the claim and the plaintiff is thereby injured, the plaintiff will have a cause of action for malpractice, but that spectre or risk exists in virtually all cases attorneys undertake. We see no reason it should assume greater significance in "bad faith" cases than in other cases.

Turning to the question of the legal sufficiency of defendants' proposed fourth affirmative defense, we could readily agree it might be subject to special demurrer or a motion to strike because of its somewhat conclusory language and, perhaps, its reference to conduct by plaintiff's former attorney not imputable to plaintiff. However, we are persuaded that in an appro-

priate case, an insured's breach of the implied duty of good faith and fair dealing which contributes to an insurer's failure to pursue or delay in pursuing the investigation and payment of a claim may constitute at least a partial defense to the plaintiff's damage action for the insurer's breach of its duty of good faith and fair dealing based on such delay or failure and, to the extent they may be the same, the insurer's or agent's breach of their statutory duties under the unfair practice act.

■■■ "[A] duty of good faith and fair dealing in an insurance policy is a two-way street, running from the insured to his insurer as well as vice versa [citation]." (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789, 797 [139 Cal.Rptr. 91].) The specific content of each party's duty "is dependent upon the nature of the bargain struck between the insurer and the insured and the legitimate expectations of the parties which arise from the contract." (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc., supra,* 26 Cal.3d at p. 918.)

There can be little question but that an insurer which provides uninsured motorist coverage has a reasonable expectation that if the insured suffers a loss claimed to be covered under the uninsured motorist provisions of the policy, the insured will promptly and accurately furnish it with all the information and evidence pertinent to the claim that is known to the insured. If a failure of the insured to do so results in delaying or impeding the investigation of the claim by the insurer or delays or makes improvident the insurer's payment of the claim, any economic loss and emotional distress caused the insured by virtue of any such nonpayment or delay in investigation or payment will have been caused either wholly or in part by the conduct of the insured. ■■■ We perceive no sound reason, nor is any suggested, why the doctrine of comparative fault enunciated and applied to negligent conduct by the California Supreme Court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and later applied as between a strictly liable defendant and a negligent plaintiff (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]) and as between two tortfeasors one of whose liability was based on strict products liability and the other on negligence (*Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441]) should not be applicable to bad faith cases. ■■■ While the duty of good faith and fair dealing arises out of a contractual relationship between the parties, breach of the duty and ensuing damages are governed by tort principles. (See, e.g., *Brandt* v. *Superior Court*

(1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796], *passim;*
*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480,
510 P.2d 1032].)[3]

Whether or not an amendment to defendants' answer was necessary to
place plaintiff's alleged comparative bad faith conduct in issue or whether
that was already in issue under one or more of the three affirmative defenses
already pled by defendants, we need not decide. If, as plaintiff argued, the
defense was encompassed within the affirmative defenses already pleaded,
that was no reason whatever to deny defendants the right to assure them-
selves the matter was placed in issue. Defendants wanted to make certain
the defense was raised, and in the absence of some prejudice to plaintiff or
some unjustifiable interference with the progress of the case, they were
entitled to do so. The court's denial of their motion, under the circumstances
presented, constituted an abuse of judicial discretion.

### Disposition

Let a peremptory writ of mandate issue to the San Bernardino Superior
Court commanding it to vacate its order denying defendants' motion to
amend their answer to the first amended complaint and to enter a new order
granting said motion. The alternative writ heretofore issued is discharged.
Defendants shall recover costs of this writ proceeding.

Morris, P. J., and McDaniel, J., concurred.

---

[3]While there may be some question as to the precise basis for liability in "bad faith"
cases (e.g., cf. *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d
752, 769-770 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Egan* v. *Mutual of Omaha Ins. Co.*
(1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]; *Johansen* v. *California State
Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744];
see also *Brandt* v. *Superior Court, supra,* 37 Cal.3d 813, 824 (dis. opn.), comparative fault
principles have been held applicable even as between negligent conduct on the one hand and
wilful misconduct on the other. (*Sorensen* v. *Allred* (1980) 112 Cal.App.3d 717 [169
Cal.Rptr. 441, 10 A.L.R.4th 937].)