[No. A042902. First Dist., Div. Two. Feb. 20, 1990.]

FARRIS PATRICK, Plaintiff and Respondent, v.
MARYLAND CASUALTY COMPANY, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1(a), the introduction and parts I, IIC, IID, and III *only* of this opinion shall be published.

**COUNSEL**

Michael J. Brady, Heather A. McKee, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Thomas H. Sloan, Julia A. Molander and Bronson, Bronson & McKinnon for Defendant and Appellant.

Walter H. Walker III for Plaintiff and Respondent.

**OPINION**

**PETERSON, J.**—Appellant Maryland Casualty Company challenges a judgment, in an action for bad faith handling of an insurance claim, assessing compensatory damages of $461,239 and punitive damages of $250,000 against it. In the published portions of this opinion, we conclude that the jury should have been instructed to consider the comparative fault of the parties in assessing damages, and that it was reversible error to refuse appellant's preferred instructions on the issue. Further, there was no substantial evidence of malice, fraud, or oppression sufficient to warrant the imposition of punitive damages. In the unpublished portions of this opinion we address other issues peculiar to the facts of this case, which we conclude should not change the results reached in the published portions of the opinion. We, therefore, reverse the judgment and remand for a new trial under proper instructions.

## I. Facts and Procedural History

In 1982, Farris Patrick (hereafter respondent) had homeowners insurance on his house issued by appellant insurance company. He had made previous insurance claims for minor property damage, and was satisfied with appellant's handling of those matters.

In December of 1982, during a series of storms, the wind pulled off shingles from a portion of respondent's roof. He repaired the affected portion of the roof temporarily with tar paper to prevent further damage, and submitted a claim for the lost shingles to appellant.

Here, the parties' versions of the relevant events begin to diverge. According to appellant insurance company, respondent was in no particular hurry about the claim, and did not communicate any sense of urgency to appellant about a need for quick payment on it. The claim was mailed to appellant, rather than being hand delivered or called in by telephone. Appellant contends that it acted reasonably promptly on the claim thereafter.

Respondent's version, which supported the jury's conclusion, is this: He told the insurance company employee he dealt with that water was coming in through holes in the roof, and that he needed the money from appellant insurance company to do necessary repairs. Appellant, however, forced him to get needless documentation and estimates which caused seemingly endless delays; then told him the check was in the mail; then told him the check must have been lost; and then delayed further in issuing another one. As a result of this delay, three months later in early March of 1983 after further water damage to his house, respondent called appellant again to complain that he still needed the money and that water damage to his house was continuing since the wind kept pulling the temporary tar paper cover off his roof. Respondent, who was a carpenter and who had done some work on the framing of roofs, then got up on the roof again to do the necessary repairs himself. He claimed that appellant insurance company's employee had told him to do this work himself, although he also later admitted that doing the work himself might have been his own idea after all.

In any event, once he got up on the roof again, respondent decided his roof was so old and deteriorated that, instead of just replacing the shingles which had been blown off, he would need to replace the entire roof and its underlying plywood panels. He went out to buy the necessary supplies, then later returned. While he was walking backward on the roof in order to pull a plywood panel into position, he lost his balance and had to jump eight feet down onto the sidewalk. Both of his heels were severely injured, and respondent underwent hospitalization and treatment. He presented evidence

showing that as a result he has been disabled from his job as a carpenter ever since.

Respondent and his wife then brought this action against appellant, claiming that appellant's actions caused his injuries and disability; and constituted negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of Insurance Code section 790.03, subdivision (h).

The case was tried to a jury in March 1988, and the evidence summarized above was adduced. During the settlement of the jury instructions, all claims on behalf of respondent's wife were withdrawn, and respondent withdrew his claims of negligence, breach of contract, and breach of fiduciary duty, leaving only his claims for breach of covenant and violation of Insurance Code section 790.03, subdivision (h) to go to the jury.

The jury found for respondent in the sum of $461,239 for compensatory damages, and also found that appellant was guilty of malice, oppression, or fraud. The jury returned the next day to hear additional evidence on the subject of punitive damages, and subsequently returned a verdict against appellant in the amount of $250,000 for punitive damages.

After its motions for judgment notwithstanding the verdict and for a new trial were denied, appellant timely appealed.

## II. DISCUSSION

### A., B.*

. . . . . . . . . . . . . . . . . . . .

### C. Comparative Fault

 The trial court refused appellant's timely request to instruct the jury to assess the fault of the parties by comparing the bad faith of appellant with the negligence of respondent. In the context of this case, that was reversible error, requiring that we remand for a new trial.[2]

---

*See footnote, *ante,* page 1566.

[2]Respondent's action originally included an explicit claim for "negligen[ce]." Had that claim gone to the jury, there would be little dispute that an instruction on respondent's comparative negligence would have been proper. During the settlement of the jury instructions, the negligence claim was dismissed by respondent, perhaps in part to avoid an instruction on comparative negligence.

A review of California jurisprudence on comparative fault principles over the past 15 years convinces us that the jury should have been instructed on the issue in this case.[3]

We begin, of course, with the Supreme Court's first adoption of comparative fault principles 15 years ago in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. In *Li*, the Supreme Court announced a comprehensive system of proportionate comparative negligence for all injuries to person or property, in what it described as "a first step in what we deem to be a proper and just direction . . . ." (*Id.,* at p. 826.) "Pending future judicial or legislative developments, the trial courts of this state are to use broad discretion in seeking to assure that the principle stated is applied in the interest of justice and in furtherance of the purposes and objectives set forth in this opinion." (*Id.,* at p. 829.)

Three years after *Li*, Justice Richardson authored an opinion for our Supreme Court in *Daly* v. *General Motors Corp., supra,* which appellant cited as authority for its requested instruction. In *Daly*, the court held comparative fault principles applicable even to strict liability actions, and stated in remarkably broad language its intent to extend comparative fault principles far beyond simple negligence actions. For the strict liability in issue in *Daly*, we have simply substituted bad faith liability: "We conclude, accordingly, that the expressed purposes which persuaded us in the first instance to adopt [bad faith liability] would not be thwarted were we to apply comparative [fault] principles. . . . If a more just result follows from the expansion of comparative principles, we have no hesitancy in seeking it, mindful always that the fundamental and underlying purpose of *Li* was to promote the equitable allocation of loss among all parties legally responsible in proportion to their fault." (20 Cal.3d at p. 737.) Thus, as early as 1978, the Supreme Court had indicated that comparative fault principles were applicable in cases not founded upon negligence, such as the instant case.

The result we reach here is also consistent with the analysis of two other cases decided in 1980 and 1981 which elucidate comparative fault principles in analogous contexts. In *Sorensen* v. *Allred* (1980) 112 Cal.App.3d 717, 723 [169 Cal.Rptr. 441, 10 A.L.R.4th 937], the Fifth District held princi-

---

[3] The proposed instruction on comparative fault which the court refused read as follows: "Comparative fault is negligence on the part of a plaintiff which, combining with the defendant's breach of its obligations of good faith and fair dealing[,] contributes as a proximate cause in bringing about the injury. [¶] Comparative fault, if any, on the part of the plaintiff does not bar a recovery by the plaintiff against the defendant but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff."

The instruction was based upon BAJI No. 9.03 (7th ed. 1986), as modified, and cited as authority *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162].

ples of comparative fault should apply in cases where willful misconduct would be compared to mere negligence: "Although our Supreme Court has not made a specific pronouncement upon the issue before us, *we find a trend in its decisions which points toward an adoption of an apportionment of the fault doctrine, irrespective of the nature of the alleged operative negligence or other basis for liability in a particular case.*" (Italics added.) "In summary, we conclude that no defensible reason exists for categorizing wilful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in *Li* rendered such a separate category unnecessary . . . . [¶] . . . The submission to triers of fact, particularly juries, of issues of liability upon the simply stated question, 'Whose fault was it, and if both are at fault, what are the degrees of fault of each' places the issues in a context more readily understood." (*Id.* at p. 725; accord *Zavala* v. *Regents of University of California* (1981) 125 Cal.App.3d 646, 650 [178 Cal.Rptr. 185] ["The trial court's conclusion that wilful misconduct bars application of the comparative negligence doctrine was erroneous."].)

Further, there is strong authority from 1985 to support an instruction on comparative *bad faith* by the plaintiff in "an appropriate case," where plaintiff asserts a bad faith claim against an insurer. (See *California Casualty Gen. Ins. Co.* v. *Superior Court* (1985) 173 Cal.App.3d 274, 282-283 [218 Cal.Rptr. 817].) Although no case has yet ruled precisely on the issue of whether *negligent* conduct by the plaintiff should be compared, in a system of comparative fault, with the bad faith conduct of an insurer which raises the defense of comparative fault, we conclude that such a defense is available in an appropriate case such as this one.

First, as Justice Kaufman noted in *California Casualty, supra,* the fact that such a defense of comparative negligence in a bad faith action has not been discussed heretofore in an appellate opinion is no good reason to reject it. "Presumably, most defenses now recognized in tort cases were at one time novel and not expressly recognized in published judicial decisions." (173 Cal.App.3d at p. 281.)

Second, we agree with Justice Kaufman's view in *California Casualty* that comparative fault principles should be applied in bad faith actions: "We perceive no sound reason, nor is any suggested, why the doctrine of comparative fault enunciated and applied to negligent conduct by the California Supreme Court in *Li* [citation], and later applied as between a strictly liable defendant and a negligent plaintiff [citation] and as between two tortfeasors one of whose liability was based on strict products liability and the other on negligence [citation] should not be applicable to bad faith cases. *While the duty of good faith and fair dealing arises out of a contractual relationship between the parties, breach of the duty and ensuing damages*

*are governed by tort principles.* [Citations.]" (173 Cal.App.3d at pp. 283-284, italics added, fn. omitted.)

Third, while our case deals with comparison of the insurer's fault in committing the tort of bad faith and the plaintiff's fault in committing alleged acts of negligence, we also "perceive no sound reason" (173 Cal.App.3d at p. 283) why such a defense should not apply. As Justice Kaufman also observed, "While there may be some question as to the precise basis of liability in 'bad faith' cases [citations], comparative fault principles have been held applicable even as between negligent conduct on the one hand and wilful misconduct on the other. [Citation.]" (*Id.,* at p. 284, fn. 3.)

Similarly, in the 1986 case of *Travelers Ins. Co.* v. *Lesher* [(1989)] 187 Cal.App.3d 169 [231 Cal.Rptr. 791] the court was unable to reach the issue we reach here, because there was no proper preservation of the issue through submission of appropriate instructions in the trial court. (187 Cal.App.3d at pp. 191-192.) Nevertheless, the court recognized in dicta, "It has recently been held that in an appropriate case, the affirmative defense of the insured's 'comparative bad faith' may be available to an insurer." (*Id.,* at p. 192, citing *California Casualty Gen. Ins. Co.* v. *Superior Court, supra,* 173 Cal.App.3d at pp. 280-284.)

Moreover, even more recently, this court (Div. Two) has held that a comparative negligence instruction may not always be avoided by plaintiff's unilateral manipulation of the mere denomination of his claim where the defendant contends that, if there was any liability at all, it arose as a result of negligence, and where that theory is supported by the evidence. (*Tint* v. *Sanborn* (1989) 211 Cal.App.3d 1225, 1230 [259 Cal.Rptr. 902].)

Further, "to the extent that the system of comparative fault established" by our Supreme Court in *Li* v. *Yellow Cab Co., supra,* "was intended to be a comprehensive one for injuries to person and property . . . ." (*Tint* v. *Sanborn, supra,* 211 Cal.App.3d at p. 1234), we must reach the same conclusion here. Like the defendant in *Tint,* appellant "clearly injected the negligence issue into the case by interposing an affirmative defense of comparative negligence in [its] answer, and . . . . thereby obviously contended by way of one defense to the allegations of [respondent's] complaint that, if [liability] existed, it resulted from [appellant's] negligent conduct and not from [its] act of intentional harm. A defendant has the clear right to request instructions on his theory of the case, if it is a reasonable theory of law which finds support in the evidence. [Citations.]" (*Id.,* at p. 1230.) Respondent's contention that there was insufficient evidence of his comparative fault to warrant instruction on the issue is without merit. The evidence showed that respondent was walking backward on a roof, pulling a heavy

plywood plank, when he lost his balance. That is evidence sufficient to warrant instruction on the issue.

Respondent advances against this conclusion the notion that such a comparison of respective fault is impossible here and constitutes an improper attempt to compare " 'apples and oranges' " (*Daly* v. *General Motors Corp.*, *supra*, 20 Cal.3d at p. 735), because the insurer's alleged misconduct was "mental" whereas the respondent's alleged negligence which caused him to fall from his roof was "physical." There are two fundamental flaws in this argument.

First, we do not accept the premise that the insured's conduct can necessarily be squeezed into only one such category, and the insurer's stretched to fit into another. Surely the insured's alleged negligence in walking backward on his roof while carrying a heavy load imports considerations of mental, as well as merely mechanical, negligence. Likewise, the insurer's misconduct here includes the misplacing of a check made payable to the insured, which may imply some mechanical misstep.

More important, however, is the fact that such an allegedly forbidden comparison of fault in both mental and physical behavior is a necessary part of any system of comparative fault. When two vehicles collide at an intersection, the finder of fact necessarily must compare both the physical reactions of the drivers and the reasonableness of their mental conduct which impels those reactions, in light of their perceptions of the possible danger. This particular example, of course, is drawn from the facts of *Li* v. *Yellow Cab Co.* itself. (13 Cal.3d at pp. 808-809.) Further, we note our Supreme Court rejected a similar argument, that there could supposedly be no comparison between " 'apples and oranges,' " in *Daly* v. *General Motors Corp.*, *supra*, where the Supreme Court held negligence may properly be compared to strict products liability in a system of comparative fault: "Fixed semantic consistency at this point is less important than the attainment of a just and equitable result." (20 Cal.3d at pp. 735-737.)

The most arresting feature which emerges from our review of the major comparative fault cases decided in the past 15 years is that, whenever the Supreme Court or the courts of appeal have been presented with a case affording an opportunity to expand the scope of comparative fault principles into new areas of tort law, the courts have done so. The reason is not far to seek; it arises from the internal dynamics of a system of comparative fault. Such a system cannot be "applied in the interest of justice" (*Li* v. *Yellow Cab Co., supra*, 13 Cal.3d at p. 829) and cannot achieve "a more just result" (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at p. 737) if parties are allowed to avoid the consequences of their comparative faults by manipulating their claims so as to avoid reference to negligence.

We conclude that comparative negligence may be available as an affirmative defense in an action for bad faith.

We next must consider whether the trial court's refusal to instruct on comparative fault principles was *reversible* error in this case. ■ "Error in instructing the jury requires reversal only when the reviewing court concludes that the error has resulted in a miscarriage of justice within the meaning of article VI, section 13 of the California Constitution. A miscarriage of justice has occurred only when this court concludes that it is reasonably probable a result more favorable to the appealing party would have been reached absent the error. [Citations.]" (*Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at p. 188.)

■ Here, it is reasonably probable that appellant would have received a more favorable result, absent the error. In this case, the jury was in essence instructed that the insurer would be liable for all respondent's damages, regardless of respondent's negligence in walking backward on his roof while pulling a heavy and unwieldy panel without taking any particular safety precautions. While we express no considered judgment, it even appears reasonably probable a comparison of the respective faults of the parties would lead to the conclusion respondent bore a substantial portion of the responsibility for his injuries caused when he fell off his roof. Certainly we cannot say as a matter of law that he was blameless. We, therefore, must reverse the judgment and remand for a new trial.

### D. *Punitive Damages*

The error in failing to instruct on comparative negligence would not necessarily void the judgment for punitive damages, since comparative negligence is not automatically a defense to conduct which is malicious, fraudulent, or oppressive. (See *Fleming* v. *Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 45 [206 Cal.Rptr. 313]; accord *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d at p. 826 ["The law of punitive damages remains a separate consideration."].) Therefore, we must examine the question of whether the judgment for $250,000 in punitive damages should be allowed to stand. We conclude that it should not, because there was no substantial evidence of malice, fraud, or oppression. (*Travelers Ins. Co.* v. *Lesher, supra,* 187 Cal.App.3d at pp. 200-202.)

■ "In a bad faith action, evidence that the insurer has violated its duty of good faith and fair dealing does not alone necessarily establish that it has acted with the requisite intent to justify an award of punitive damages." (187 Cal.App.3d at p. 200.) "Even if an insurer has acted unreasonably, it need not follow that it also acted with malice." (*Ibid.*)

■ We review the record for substantial evidence of circumstances warranting the imposition of punitive damages. We reject appellant's argument that a more stringent standard than the normal substantial evidence rule should apply due to the 1987 amendments to Civil Code section 3294, subdivision (a) which required that the trier of fact find "clear and convincing evidence" of malice, fraud, or oppression. (Stats. 1987, ch. 1498, § 5, No. 12 West's Cal. Legis. Service, pp. 850-851; No. 5 Deering's Adv. Legis. Service, p. 5930.) Despite the difference in the standard for the determination of this issue by the trier of fact, it has been held that in such circumstances the substantial evidence test applied by the reviewing court is not altered. (*Crail* v. *Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027] ["That standard [of clear and convincing evidence] was adopted, however, for the edification and guidance of the trial court, and was not intended as a standard for appellate review. . . . '[I]f there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]"]; accord *In re Marriage of Saslow* (1985) 40 Cal.3d 848, 863 [221 Cal.Rptr. 546, 710 P.2d 346].)

■ There was substantial evidence in this case, as we have discussed above, that appellant's claims handling practices were shoddy, and that its handling of the claim sought by the respondent was at times witless and infected with symptoms of bureaucratic inertia and inefficiency. However, after a review of the full record, we find no substantial evidence that its actions were malicious, fraudulent, or oppressive. While in other circumstances a consistent and unremedied pattern of egregious insurer practices might rise to the level of a malicious disregard of the insured's rights, we cannot find liability here for punitive damages based merely upon the insurer's inept and negligent handling of a claim. (See Civ. Code, § 3294.) "We conclude that the award of punitive damages must be reversed." (*Travelers Ins. Co.* v. *Lesher, supra*, 187 Cal.App.3d at p. 202.)

### III. DISPOSITION

The judgment is reversed, and the denial of appellant's motion for new trial is reversed. The case is remanded for further proceedings in accordance with the views expressed herein.

Kline, P. J., and Smith, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 1990.