[No. G041835. Fourth Dist., Div. Three. Dec. 8, 2010.]

KIRSTEN BURTON, Plaintiff and Appellant, v.
JOSEPH T. CRUISE et al., Defendants and Respondents.

**COUNSEL**

Walter R. Zech; Law Offices of William J. Kopeny and William J. Kopeny for Plaintiff and Appellant.

Reback, McAndrews, Kjar, Warford & Stockalper, Terrence J. Schafer; Cole Pedroza, Kenneth R. Pedroza, Joshua C. Traver and Matthew S. Levinson for Defendants and Respondents.

**OPINION**

**ARONSON, J.**—We affirm the trial court's determination that a patient waived her contractual right to arbitrate a medical malpractice dispute by waiting to pursue arbitration until the virtual eve of trial, long after discovery, including expert discovery, had been completed.

Substantial evidence supports the trial court's factual determination on waiver, based on our Supreme Court's multifactored test in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*). The physician suffered prejudice by losing whatever time and cost benefits could have been gained through arbitration and by focusing his litigation efforts on a jury trial rather than an arbitration panel. Audiences matter, and the factual record supports a finding of prejudice.

## I

### Factual and Procedural Background

Plaintiff Kirsten Burton consulted with defendant Joseph T. Cruise, a Newport Beach plastic surgeon, regarding a liposuction procedure. In a preprinted agreement, Burton and Cruise agreed to arbitrate "any issue of medical malpractice . . . ." (Capitalization omitted.) The agreement provided that either party could submit an arbitration demand in writing.

In April 2008, Burton sued Cruise for medical malpractice, alleging that he negligently perforated her viscus and small bowel during the liposuction, resulting in contamination of her abdominal wall.[1] Despite the arbitration agreement, Burton failed to request an order compelling arbitration or otherwise mention the parties' right to arbitrate.

In early July 2008, Burton filed a case management statement requesting a jury trial, estimated to last 10 days. While Burton checked a box on the case management form regarding mediation, she failed to check a box on the same form regarding binding arbitration.

The trial court held a case management conference later that month. The court verified that all potential parties, including all potential defendants, were named and served. Rather than seeking arbitration, Burton requested a trial date, which the court set for April 2009.

The parties engaged in discovery during the next six months, including propounding and responding to interrogatories and requests for production of documents and depositions. They exchanged their expert lists before the February 2009 deadline.

On February 20, 2009, Burton's counsel faxed a letter to defense counsel demanding arbitration under the arbitration agreement, but suggesting that a single, neutral arbitrator conduct the arbitration rather than a panel, as the agreement specified. Defense counsel declined, arguing Burton had waived arbitration.

Burton's counsel waited until March 11, 2009, to move ex parte for an order shortening time to hear a petition to compel arbitration. The court shortened the time for a hearing to March 17, 2009.

---

[1] Burton named Cruise individually and through his professional corporation. For convenience, we refer to defendants collectively in the singular.

In opposition, Cruise argued that Burton waived her contractual right to arbitration. Defense counsel declared that he designated expert witnesses "very specifically with an eye towards presentation in a superior court trial as opposed to a binding arbitration. As a practical and strategic matter, that same panel of expert witnesses would not have been selected for this case had it been known that the case was proceeding in binding arbitration rather than superior court trial before a jury."

The trial court conducted a hearing on March 17, but took the matter under submission because it had not reviewed Cruise's opposition. At the hearing, the court expressed doubt that Burton could demand arbitration after participating in the litigation process through the eve of trial: "I think if you availed yourself of the authority of the court in your action, it seems to me that you can't at the last minute say . . . but now we want to arbitrate it." The court denied Burton's arbitration demand by minute order on March 25, 2009, and this appeal followed. (See Code Civ. Proc., § 1294, subd. (a).)[2]

## II

### DISCUSSION

#### A. *Governing Principles and Standard of Review*

■ California law favors arbitrations as a relatively quick and cost-effective means to resolve disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) There is a statutory exception where the "right to compel arbitration has been waived" by the moving party. (§ 1281.2, subd. (a).)

Although the statute speaks in terms of "waiver," the term is used " 'as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' " (*St. Agnes, supra*, 31 Cal.4th at p. 1195, fn. 4.) This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have "waived" its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 314 [24 Cal.Rptr.2d 597, 862 P.2d 158]; see also *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12, 18 [111 Cal.Rptr.3d 335].)

■ In *St. Agnes*, our Supreme Court set forth a multifactor test to assess waiver claims. While waiver is not a mechanical process, and no one factor is

---

[2] All statutory references are to the Code of Civil Procedure.

predominant, the pertinent factors for this appeal are: (1) Did the party seeking arbitration act inconsistently with the right to arbitrate or otherwise substantially invoke the litigation process? (2) Are the parties "well into preparation" of the lawsuit? (3) Is there an imminent trial date? (4) Has the delay affected, misled, or prejudiced the opposing party? (See *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

Burton dismisses the *St. Agnes* multifactor test as nothing but "words" which are trumped by "the rule that *absent actual prejudice*, none of these factors is sufficient on which to base or uphold a finding of waiver of the right to arbitrate." We disagree.

■ *St. Agnes* cautions us to examine each case in context. "[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes, supra*, 31 Cal.4th at p. 1195.) True, the mere filing of a complaint, without more, does not constitute the forfeiture of a right to contractual arbitration: "In California, whether or not litigation results in prejudice also is critical in waiver determinations." (*Id.* at p. 1203.)

But does this mean that a litigant may wait until trial is due to commence before demanding arbitration? To the contrary, in *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19 [58 Cal.Rptr.3d 434, 157 P.3d 1029], the Supreme Court expressly observed that a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate. "[A] party may [not] postpone arbitration indefinitely by delaying the demand . . . . [¶] When no time limit for demanding arbitration is specified, a party must still demand arbitration within a reasonable time. [Citation.] . . . '[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' " (*Id.* at pp. 29–30.)

■ And in *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1452 [110 Cal.Rptr.3d 104] (*Adolph*), we recognized that a party could not blow hot and cold by pursuing a strategy of courtroom litigation only to turn towards the arbitral forum at the last minute, thereby frustrating the goal of arbitration as a speedy and relatively inexpensive means of dispute resolution: "We are loathe to condone conduct by which a [litigant] repeatedly uses the court proceedings for its own purposes . . . all the while not breathing a word about the existence of an arbitration agreement, or a desire to pursue arbitration . . . ." (*Id.* at p. 1452.)

We recognize that waiver is not to be lightly inferred and the party seeking to establish it bears a "heavy burden of proof," with all doubts resolved in favor of arbitration. (*St. Agnes, supra*, 31 Cal.4th at p. 1195.) Like the "clear

and convincing" standard of proof, these higher burdens guide the trial court's determination, but do not alter the standard of review on appeal. " 'It was the trial court's duty to determine whether' the petitioners met their 'burden of proof; it is our duty to determine whether there is substantial evidence to support the trial court's findings that it did.' " (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1382 [105 Cal.Rptr.3d 521]; see *Patrick v. Maryland Casualty Co.* (1990) 217 Cal.App.3d 1566, 1576 [267 Cal.Rptr. 24].) "Although the burden of proof is heavy on the party seeking to establish waiver, which should not lightly be inferred in light of public policy favoring arbitration, a determination by a trial court that the right to compel arbitration has been waived ordinarily involves a question of fact, which is binding on the appellate court if supported by substantial evidence. The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 [69 Cal.Rptr.2d 79].)

On appeal, we review waiver as a factual inquiry for the trial court, and will affirm if substantial evidence supports the trial court's determination. (*Adolph, supra,* 184 Cal.App.4th at pp. 1449–1450.) We construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [80 Cal.Rptr.2d 378].)

### B. *Burton's Unreasonable Delay*

The standard of review precludes us from reweighing the evidence surrounding Burton's claim she promptly informed Cruise of her desire to arbitrate rather than litigate. In the petition to compel arbitration, Burton's counsel declared that he "orally" informed defense counsel of her intent to arbitrate. Cruise denied this claim. "No party made any effort to pursue arbitration" at that time, or otherwise "signal[ed] any intent to seek arbitration . . . at some later date in the future."

That ends the story. Given the disputed facts, we resolve any evidentiary conflicts in favor of the trial court's determination. (*Adolph, supra,* 184 Cal.App.4th at pp. 1449–1450.)

Here, even aside from Cruise's denial, substantial evidence supports the trial court's implied finding that Burton did not provide early notice. Her attorney's supporting declaration never specified to whom he gave oral notice, or when he gave it. The dispute over the oral notice underscores why the arbitration agreement required *written,* rather than oral, notice.

Indeed, Burton's subsequent litigation conduct belies an intent to arbitrate. Rather than designating her party arbitrator within 30 days of her notice of

intent to arbitrate, as the contract requires, she requested a jury trial at the case management conference and conducted discovery in the course of her civil action, rather than through arbitration. As Cruise points out, "[t]he absence of even a single letter from plaintiff's counsel indicating a preference for arbitration at the beginning of the case, let alone a petition to compel arbitration, speaks volumes."

Burton explains she delayed seeking arbitration because she was uncertain whether she might add other potential tortfeasors who were not subject to the arbitration agreement. But by the case management conference in July 2008, her counsel agreed with the court's assessment that "[i]t doesn't look like we're going to have any more doctors here or medical people or other parties." Despite this, Burton, far from seeking arbitration, asked the trial court to set a trial date, which the court proceeded to do.

## C.   *Substantial Evidence of Prejudice*

Burton argues there is no substantial evidence of waiver because there is nothing in the record to show Cruise suffered prejudice because of her delay in seeking arbitration. She gained no benefit otherwise unattainable in arbitration because there were no law and motion proceedings, and because she would have had the same discovery rights under the arbitration agreement.

■   Again we disagree. Contrary to Burton's claim, an egregious delay may result in prejudice. As the Supreme Court explained in *St. Agnes*, prejudice is typically found where "the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes, supra*, 31 Cal.4th at p. 1204.)

In *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 995 [72 Cal.Rptr.2d 43] (*Sobremonte*), the appellate court found that a bank waived its rights to arbitrate a dispute with its customers by waiting to demand arbitration until its customers "spent 10 months preparing their case for a full trial at a considerable expenditure of time and money . . . . Their counsel expended over 200 hours in trial preparation. [The customers] incurred attorney fees and costs for conducting discovery and taking depositions. They were well into case preparation, and a little over a month to trial, when the Bank made its motion to compel." The bank's delay deprived the customers of any benefits to be gained from arbitration. "If we consider the amount of time and money they have already spent in the judicial system, any benefits they may have achieved from arbitration have been lost." (*Id.* at p. 996.)

Burton argues that the subsequent decision in *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1197 [98 Cal.Rptr.2d 836] (*Groom*), disapproved of *Sobremonte* on this point. In *Groom*, the Court of Appeal reversed an order denying a petition to compel arbitration even though the petitioning party did not file a motion to compel until 11 months after the filing of the complaint and after the petitioning party demurred four times to the original and amended complaints. *Groom* found no waiver "simply from the time and expense of opposing [the petitioning party's] demurrers and drafting amended pleadings." (*Groom*, at p. 1197.) According to *Groom*, "[p]rejudice in the context of waiver of the right to compel arbitration normally means some impairment of the other party's ability to participate in arbitration." (*Ibid.*)

■ To the extent there is a conflict between the two cases, we believe that it is *Groom*, not *Sobremonte*, which should be left standing at the altar. *Groom* conceded that the other side could be prejudiced from the petitioning party's conduct even where there has not been litigation on the merits. (*Groom, supra*, 82 Cal.App.4th at p. 1195 ["Because there has not been litigation on the merits, Groom was required to show that she suffered prejudice from Health Net's conduct."].) *Groom*, however, erred in failing to recognize that a petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes." (*Sobremonte, supra*, 61 Cal.App.4th at p. 996.) Arbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel.

In *St. Agnes*, the Supreme Court cited both *Groom* and *Sobremonte* as opposite extremes of the same continuum for finding prejudice. (*St. Agnes, supra*, 31 Cal.4th at pp. 1203–1204.) But, as *St. Agnes* recognized, the critical factor in demonstrating prejudice is whether the party opposing arbitration has been substantially deprived of the advantages of arbitration as a " ' "speedy and relatively inexpensive" ' " means of dispute resolution. (*Id.* at p. 1204.) "Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect ' "a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' and are intended ' "to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." ' " (*Ibid.*)

On a closer, policy-based analysis, *St. Agnes* seems more wedded to *Sobremonte* than to *Groom*. Although we believe the cases are not necessarily inconsistent, to the extent there is a conflict, it is *Groom* which is the odd man out.

■ Here, substantial evidence supports the trial court's implicit determination that granting Burton's belated arbitration request deprived Cruise of the benefits available through arbitration, including a speedy resolution of the dispute. (See *Adolph, supra*, 184 Cal.App.4th at p. 1451.)

First, Burton did nothing to bring about arbitration for some 11 months, taking action only weeks before the scheduled trial date. By this time, Cruise not only had designated his medical experts, but had completed discovery, including depositions.

Indeed, Burton's 11th-hour arbitration petition was so untimely that she had to move ex parte to shorten the time to be heard. Had she prevailed, the parties then would have an additional 30 days to select their individual party arbitrators and an additional 30 days to select the neutral third arbitrator.

Rather than avoiding delay, as arbitration is intended to do, Burton's suggested remedy would have made dispute resolution less expeditious and more expensive. "Through [the moving party's] delay . . . [the opposing party] has lost whatever efficiencies that would otherwise have been available to it through arbitration. Simply put, ' "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." ' " (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 [94 Cal.Rptr.2d 201] [waiver found where moving party participated in discovery before seeking arbitration].) "Starting anew in an arbitral forum at that late date would delay resolution of the dispute, not advance it." (*Adolph, supra*, 184 Cal.App.4th at p. 1452.)

■ California public policy strongly favors arbitration clauses precisely to respect contractual choices to avoid the inherent delays and ever-increasing costs of litigation. By litigating rather than arbitrating until the time of trial, Burton has circumvented the expected benefits to be archieved from a speedy and relatively inexpensive arbitral forum. Depriving a party of the benefits of his or her bargain is the epitome of prejudice. Here, arbitration delayed is arbitration denied.

Second, Cruise presented evidence, through his counsel's declaration, that he specifically designated experts based on an assumption they would testify at trial before a jury, rather than before an arbitration panel. As Cruise explains: "There is a vast difference between a jury of 12 persons selected *randomly*, and a three-member arbitrator panel, all of whom are selected *purposefully* and two of whom are not expected to be neutral. [Citation.] Arbitration is an informal process in which evidence is often taken in the form of a conversation. Arbitrators can pose questions to witnesses and experts, and may

undertake to cross-examine the witness on any issue they see fit. This facilitates a more sophisticated and quick-paced presentation than is typically possible in jury trials. It is not surprising to think that one's style, tone, and strategy for presenting facts and arguments would be different for each type of forum."

Based upon these factors, defense counsel designated experts specifically selected for their ability to teach jurors about complicated subjects in relatively simple terms. Defense counsel asserted that he would have made different choices for an arbitral forum, where his focus would be more technical and academic. This constitutes substantial evidence of prejudice, and therefore supports the trial court's decision to deny Burton's arbitration petition.

In her petition for rehearing, Burton takes us to task for confusing speculation with evidence. We understand the distiction, but can only speculate why appellant has overlooked it. In a declaration filed with the trial court (and hence part of the factual record on appeal), Cruise's trial counsel flatly declared: "[T]he defendants and defense counsel selected their expert witnesses very specifically with an eye towards presentation in a superior court trial as opposed to a binding arbitration. As a practical and strategic matter, that same panel of expert witnesses *would not have been selected* for this case had it been known that the case was proceeding in binding arbitration rather than superior court trial before a jury." (Italics added.)

This is neither speculation nor mere attorney argument, but actual evidence. We know of no more unequivocal way in which Cruise's trial counsel, who was the decision maker who designated the experts, could have described the resulting prejudice to his client.

Burton dismisses any possible adverse impact from Cruise's tactical decision, arguing "[t]he truth is the truth and an oath is just as binding regardless of what form of dispute resolution is involved." "No case holds that any party has been prejudiced by selecting experts thinking the case would be tried to a jury rather than arbitrated. No case holds that merely retaining an attorney when a Superior Court complaint is filed constitutes prejudice when later the plaintiff opts to arbitrate, and no case holds that participating in litigation to the limited degree involved in this case . . . constitutes prejudice."

But the common law recognizes and protects a lawyer's strategic and tactical decisions during a competitive litigation process " 'from its historic notion that a struggle—warfare, if you will—between vitally interested partisans, is most apt to expose the truth . . . .' " (*Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 377 [15 Cal.Rptr. 90, 364 P.2d 266].) "Proper

preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." (*Hickman v. Taylor* (1947) 329 U.S. 495, 511 [91 L.Ed. 451, 67 S.Ct. 385].)

Determining who to designate as a witness is a quintessential lawyering skill. Like lawyers, experts are not fungible. Indeed, one treatise on pretrial selection of experts advises counsel to consider their teaching skills, including their ability "to explain [themselves] clearly and [to] put technical jargon into language comprehensible to a lay jury." (Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2010) ¶ 2:462 to 2:463, p. 2(I)-74 (rev. # 1, 2010).) Counsel specifically is directed to "put yourself in the shoes of a person who has no knowledge about the subject; and ask whether *you* understand what the expert is saying. If he or she is unable to communicate the difficult points to *you*, undoubtedly a lay jury would be confused as well." (*Ibid.* (rev. # 1, 2010); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 8:1689, p. 8J-21 (rev. # 1, 2009) [discussing utility of expert depositions to "expose[] the opponent's theory of the case, *and how well this expert can present it*" (italics added)].)

Considering the relevant factors, and drawing the inferences most favorable to the trial court's order, we conclude the trial court properly determined that Burton waived her contractual right to arbitration. Were Cruise compelled to arbitrate now, arbitration would be neither speedy nor inexpensive.

### III

#### DISPOSITION

The order denying plaintiff's petition to compel arbitration is affirmed. Defendants are entitled to costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.

A petition for rehearing was denied January 4, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 23, 2011, S189815.