Filed 5/19/15  Alexander v. Market Street Apartments CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LILLIAN ALEXANDER et al., | D066382 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No.  37-2013-00074063-CU-OE-CTL) |
| MARKET STREET APARTMENTS, LLC, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Kimball, Tirey & St. John, Karl P. Schlecht and Michaelene H. Dody for Defendant and Appellant.

Kevin C. Young for Plaintiffs and Respondents.

Lillian and Robert Alexander (together the Alexanders) sued Market Street Apartments, LLC (Market Street), among others, in San Diego Superior Court.  Market Street answered the complaint and included an affirmative defense that the Alexanders'

claims were subject to an arbitration provision contained in an employment agreement signed by the Alexanders but not Market Street.

Five months prior to trial, Market Street brought a petition to compel arbitration and did so only after engaging in extensive discovery over several months. The superior court denied Market Street's petition, finding the arbitration agreement was not enforceable, Labor Code section 229 prohibited arbitration of the Alexanders' claims, and Market Street waived its right to arbitrate.

Market Street appeals, contending the arbitration agreement is enforceable, the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) preempts the Labor Code, and substantial evidence does not support the court's finding that it waived its right to arbitrate.

We conclude that Market Street forfeited its arguments that the arbitration agreement is enforceable and the FAA preempts the Labor Code because it failed to raise them in superior court. In addition, by failing to provide us with a reporter's transcript of the hearing on its petition, we have an incomplete record on which to analyze Market Street's claims. This absence of a reporter's transcript undermines Market Street's substantial evidence challenge to the court's finding of wavier. In any event, we are satisfied based on the limited record before us that substantial evidence supports the court's order. Therefore, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Market Street hired the Alexanders as resident managers of its apartments. Prior to beginning their employment, Market Street informed the Alexanders they needed to

2

sign a document entitled "On-Site Employee Agreement" (Agreement).  The Agreement consisted of 11 preprinted pages[1] with blanks.  Some of the blanks were completed with handwritten words or numbers while others were left blank.

The Alexanders were not told they could change or negotiate any of the Agreement's terms.  The Alexanders believed they had to sign the Agreement or they would be terminated.  As such, they signed it.  Market Street did not sign the Agreement.

The Agreement contained an arbitration provision that provided in part:

> "Arbitration of Disputes:  Any controversy of [sic] claim arising out of or related to this Agreement, or the breach thereof, except for unlawful detainer actions or any dispute that arises from Employer's action to regain possession of the premises, or actions brought for wages before the California Labor Commissioner or related to workers' compensation, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association.  The Employer will pay the costs for the arbitrator and hearing room.  Any arbitration award rendered must be in writing, setting forth the reasons for the decision and may be entered as a judgment in any court of competent jurisdiction.  Arbitration decisions/awards issued pursuant to this judgment are final and binding."

Subsequently, multiple disputes arose between the Alexanders and Market Street regarding compensation and working hours.  After the Alexanders requested their tax statements from Market Street, Market Street terminated their employment.

After being terminated, Robert Alexander applied for unemployment insurance benefits.  He was denied because Market Street had never reported him as an employee to the Employment Development Department and did not provide for unemployment insurance.

---

1        Only 10 of the 11 pages of the Agreement are included in the record.

3

On November 1, 2013, the Alexanders filed suit in San Diego Superior Court, alleging causes of action for failure to pay wages; failure to pay overtime wages; waiting time penalties; tortious termination in violation of public policy; violation of Labor Code section 1182.8; and violation of Labor Code section 226. On December 16, 2013, Market Street filed an answer, which included an affirmative defense that the claims were subject to arbitration.

Three days later, the Alexanders served form interrogatories on Market Street. On January 9, 2014, Market Street served 10 sets of written discovery on the Alexanders, including form interrogatories, employment litigation form interrogatories, 162 special interrogatories, 30 requests for admissions, and 70 requests for production of documents. Almost a month later, Market Street noticed the videotaped depositions of the Alexanders, which were accompanied by additional requests for documents.

The Alexanders responded to the written discovery and produced 698 pages of documents.

Market Street's counsel sent a letter dated March 5, 2014 to the Alexanders demanding that the Alexanders dismiss their complaint and pursue any claims against Market Street through arbitration with the American Arbitration Association per the Agreement. On March 16, 2014, the Alexanders' counsel responded to the March 5 letter, refusing to dismiss the complaint. In addition, the Alexanders' counsel asserted that there was no valid agreement to arbitrate, Market Street had waived arbitration, and the Agreement was procedurally and substantively unconscionable.

On March 18 and 19, 2014, Market Street took the depositions of the Alexanders. In response to the additional document demands, the Alexanders produced 91 pages of documents at their depositions.

On March 20, 2014, the Alexanders served Market Street with employment litigation form interrogatories and 26 requests for production of documents. At its request, Market Street was granted extensions of over a month to respond.

In March, the parties filed case management conference statements. At the case management conference on April 4, 2014, the court set the trial date of November 21, 2014.

On May 29, 2014, Market Street served its responses to the written discovery propounded by the Alexanders. Market Street did not object on the grounds that the matter should be arbitrated. Nor did Market Street produce any documents.

On June 5, 2014, Market Street filed a petition to compel arbitration. In the petition, Market Street argued that the Alexanders' claims were subject to a valid arbitration provision in the Agreement. It also argued that it had not waived arbitration. A declaration from Market Street's counsel accompanied the petition. In that declaration, Market Street's counsel implied she delayed demanding arbitration in the hope that the parties would mediate the dispute.

The Alexanders filed an opposition to the petition to compel arbitration. In that opposition, they asserted: (1) the Agreement was not valid because of a lack of mutuality; (2) the Agreement was void; (3) Market Street waived the right to seek arbitration; and (4) the Agreement was unconscionable. In support of the opposition, the

Alexanders submitted their declarations as well as the declaration of their counsel. They also objected to portions of Market Street's counsel's declaration filed in support of the petition.

Apparently, Market Street did not file a reply.

After hearing oral argument[2] and considering the pleadings and evidence, the court denied the petition. In doing so, the court found the arbitration provision in the Agreement was not enforceable because Market Street never signed the Agreement. In addition, the court found that Market Street had waived its right to arbitrate by conducting discovery and actively litigating the matter in superior court. The court also found that the Alexanders had been prejudiced by Market Street's actions. Finally, the court determined that Labor Code section 229 prohibited arbitration of the Alexanders' claims.

Market Street timely appealed.

DISCUSSION

Market Street challenges the superior court's order denying its petition to compel arbitration. Specifically, Market Street asserts: (1) the Agreement is enforceable; (2) mutuality is not required; (3) even if mutuality is required, it can be implied by the Agreement itself; (4) the FAA preempts Labor Code section 229; and (5) it did not waive its right to arbitrate.

---

2    There is no transcript from the hearing in the record. We repeat many of the court's findings from its minute order.

# I

## *MARKET STREET FORFEITED MOST ISSUES ON APPEAL*

The party petitioning to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) In its petition to compel arbitration, Market Street maintained that the Agreement was enforceable, contained a valid arbitration provision, and it did not waive its right to arbitrate. In opposition, the Alexanders contended the Agreement was unenforceable because of a lack of mutuality, the Agreement was void because it violated Labor Code section 1194, subdivision (a), the Agreement was unconscionable, and Market Street waived arbitration by litigating the matter in superior court. As part of its unconscionability argument, the Alexanders asserted Labor Code section 229 prohibits arbitration of claims for unpaid wages. Market Street did not file a reply to the opposition. Also, we do not have the benefit of the transcript of the hearing on the petition to compel arbitration so we do not know what was argued to the superior court or what additional evidence, if any, Market Street offered.

Here, in its opening brief, Market Street, for the first time, finally addresses the arguments the Alexanders raised with the superior court. We ordinarily will not consider for the first time on appeal claims that could have been but were not presented to the trial court. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 ["It is a firmly entrenched principle of

7

appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory. To permit this change in strategy would be unfair to the trial court and the opposing litigant."]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 ["[P]arties are not permitted to ' "adopt a new and different theory on appeal." ' "].)

Market Street acknowledges that it is raising these issues for the first time on appeal, but insists that we have the "discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts." (*Brown v. Boren*, *supra*, 74 Cal.App.4th at p. 1316.) Although we agree we do have such discretion, we determine this is not the case in which to consider these newly raised issues.

As a threshold matter, we observe Market Street did little, in the superior court, to prove the existence of an enforceable arbitration agreement. It simply submitted the declaration of its trial counsel who declared, among other things, that the Alexanders entered into the Agreement with Market Street that required the parties to arbitrate their disputes. However, the court sustained the Alexanders' objection to this portion of the attorney's declaration. As such, Market Street offered no evidence that the parties entered into an enforceable Agreement requiring the arbitration of disputes. On appeal, Market Street does not take issue with this ruling nor does it provide any citations to the record that it provided evidence that the parties entered into an enforceable agreement.

In opposition to the petition to compel arbitration, the Alexanders offered evidence, by way of their declarations, that: (1) Robert Alexander was instructed to sign

8

on the employee signature line; (2) Lillian Alexander was instructed to sign on the employer signature line; (3) the Alexanders were not told that they could change or negotiate any of the Agreement's terms; (4) no one informed the Alexanders that they did not have to agree to arbitrate claims; (5) the Alexanders signed the Agreement under the belief that if they did not do so, they would be terminated; and (6) Market Street refused to sign the Agreement. In addition, a cursory review of the Agreement indicates that it is a preprinted form with handwritten terms in some blanks in the Agreement, but it also appears that other blanks in the Agreement were not completed. For example, the section concerning employee compensation (section 8) is blank although the Agreement clearly calls for the parties to check either 8(a) or 8(b). The Alexanders' declarations as well as their opposition to the petition raise questions regarding the validity of the Agreement. We find nothing in the record where Market Street challenged these assertions. Nor is there any indication that Market Street submitted any admissible evidence regarding the drafting or execution of the Agreement.

In short, the Alexanders raised factual issues regarding the enforceability of the Agreement to be resolved by the superior court. Based on the limited record before us, Market Street did not respond to any of the issues raised by the Alexanders.

Now, Market Street urges this court to ignore the factual disputes, but instead, answer purely legal questions regarding the enforceability of the Agreement, specifically whether mutuality is required or can be implied from the Agreement. Against Market Street's utter failure to make these arguments to the superior court or even address the significant factual issues raised by the Alexanders with the superior court, we deem

9

Market Street has forfeited its claims that the Agreement contains an enforceable arbitration provision. (See *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 (*Kern County*).) We thus do not address any of Market Street's arguments regarding mutuality.

Likewise, we are unimpressed by Market Street's contention that the FAA dictates that this matter be arbitrated. For the first time on appeal, Market Street argues this case involves interstate commerce; thus, it falls under the FAA and arbitration is required. Market Street did not mention the FAA in its petition, filed no reply, and we have no record of what occurred at the hearing on the petition. Moreover, the issue of whether a case involves interstate commerce, and thus falls under the FAA, is a factual question. (*Strauch v. Eyring* (1994) 30 Cal.App.4th 181, 185, fn. 1; *Goodwin v. Elkins & Co.* (3d Cir. 1984) 730 F.2d 99, 108-109.) There are no facts in the record from which a determination could be made whether this case involves interstate commerce. As such, Market Street has forfeited this issue. (See *Kern County*, *supra*, 209 Cal.App.4th at p. 1038.) We therefore decline to address this argument as well.

In conclusion, we determine that Market Street has forfeited its claims that the Agreement is enforceable, mutuality is not required, mutuality can be implied from the Agreement, and the FAA requires arbitration of the instant matter. (See *Kern County*, *supra*, 209 Cal.App.4th at p. 1038.)

10

## II

*SUBSTANTIAL EVIDENCE SUPPORTS THE COURT'S FINDING OF WAIVER*

Even if we assume that the Agreement contained an enforceable arbitration provision, we nevertheless would conclude substantial evidence supports the superior court's finding that Market Street waived its right to arbitrate.

### A.  Standard of Review

Whether a party waived the right to contractual arbitration is a factual question we review under the substantial evidence standard of review.  (*Augusta v. Keene & Associates* (2011) 193 Cal.App.4th 331, 337; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 (*Burton*).)  The trial court's "determination of this factual issue, ' "if supported by substantial evidence, is binding on an appellate court." '  [Citations.]  Only ' "in cases where the record before the trial court establishes a lack of waiver as a matter of law, [may] the appellate court . . . reverse a finding of waiver made by the trial court." ' "  (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450 (*Adolph*); *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12 (*Zamora*).)

We imply all necessary findings supported by substantial evidence (*Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1364 (*Berman*); *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 (*Sobremonte*)) and "construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance."  (*Burton*, *supra*, 190 Cal.App.4th at p. 946.)  "If more than one reasonable inference may be drawn from undisputed facts, the substantial evidence rule requires

indulging the inferences favorable to the trial court's judgment."  (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 (*Davis*).)

## B.  Incomplete Record

As its name implies, a substantial evidence review requires our analysis of the evidence submitted to the superior court.  Often critical in such analysis is our review of what occurred at the hearing.  Here, we do not have the benefit of a transcript of the subject hearing.

It is universally recognized that the appellant has the burden of showing error by an adequate record.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.)  Appellate courts "adopt all intendments and inferences to affirm the judgment or order unless the record expressly contradicts them."  (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) Where an appeal is presented to us with no reporter's transcript, the trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence, "unless the judgment is not supported by the findings or reversible error appears on the face of the [available] record."  (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207; accord, *Nielsen*, *supra*, at pp. 324-325; *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521.)  Put another way, "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be conclusively presumed correct as to all evidentiary matters. . . . [I]t is presumed that the unreported trial testimony would demonstrate the absence of error."  (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics omitted.)  The general effect of this rule is that "an appellant who attacks a judgment but supplies no reporter's

12

transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Ibid*.)

In the instant matter, because of the lack of a reporter's transcript, we must limit our review of the evidence to the pleadings and evidence submitted in support of the pleadings that are contained in the clerk's transcript. Here, Market Street's evidence consists of a declaration from its counsel, the Agreement, a March 5, 2014 letter demanding arbitration, and the Alexanders' response declining to arbitrate the dispute.

C. Analysis

California law reflects a strong public policy favoring arbitration as " ' "a speedy and relatively inexpensive means of dispute resolution." ' " (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 (*St. Agnes*).) Nonetheless California courts may refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including waiver. (See Code Civ. Proc., § 1281; *St. Agnes*, *supra*, at p. 1194.) Based on the public policy favoring arbitration, claims of waiver receive "close judicial scrutiny" and the "party seeking to establish a waiver bears a heavy burden." (*Ibid.*)

"Although the statute[s and case law] speak[ ] in terms of 'waiver,' the term is used ' "as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." ' [Citation.] This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver

13

is more like a forfeiture arising from the nonperformance of a required act." (*Burton*, *supra*, 190 Cal.App.4th at p. 944.)

"[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1195-1196.) In *St. Agnes*, the California Supreme Court adopted as the California standard the same multifactor test employed by federal courts for evaluating waiver claims. (*Id*. at p. 1196; *Zamora*, *supra*, 186 Cal.App.4th at p. 15.)

Specifically, the court in *St. Agnes* identified the following as "factors [that] are relevant and properly considered in assessing waiver claims": "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) No one of these factors predominates and each case must be examined in context. (*Burton*, *supra*, 190 Cal.App.4th at pp. 944-945.)

Here, the court found Market Street waived the right to arbitrate the Alexanders' claims by (1) delaying the filing of its petition to compel arbitration demand for over six

months; (2) acting inconsistently with the right to arbitration; and (3) prejudicing the Alexanders through the delay. These findings justify the court's ruling and substantial evidence supports each finding. Accordingly, we affirm the trial court's waiver determination.

### 1. Unreasonable Delay

" '[A] demand for arbitration must not be unreasonably delayed. . . . [A] party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration.' " (*Sobremonte*, *supra*, 61 Cal.App.4th at pp. 992-993.) The party seeking to compel arbitration, "ha[s] the responsibility to 'timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation.' " (*Id*. at pp. 993-994.)

Here, we are concerned with Market Street's perfunctory attempt to arbitrate the matter. There is no dispute that Market Street was aware of the possibility that the Alexanders' claims could be arbitrated under the Agreement. On December 16, 2013, Market Street's answer to the complaint included an affirmative defense that the claims were arbitrable. However, Market Street did nothing to effectuate its arbitration rights until almost three months later, when its counsel sent a letter to the Alexanders' counsel dated March 5, 2014, demanding that the Alexanders dismiss their complaint and agree to arbitration. The Alexanders' counsel sent a letter to Market Street's counsel dated March 16, 2014, refusing to dismiss the complaint or arbitrate the matter. Market Street continued to litigate the matter in superior court, engaging in additional discovery and appearing at a case management conference where the court set a trial date. There is no

15

indication in the record that Market Street did anything during this period to facilitate arbitration.

Finally, over seven months after the complaint was filed, three months after it first demanded that the Alexanders dismiss their complaint and agree to arbitrate, and two months after the superior court set a trial date, Market Street filed a petition to compel arbitration.

We cannot fault the court's conclusion that a delay of over six months in filing a petition to compel arbitration was unreasonable under these circumstances. Indeed, other courts have found comparable delays to be unreasonable and justification for a waiver finding. (See *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 446 (*Lewis*) [four-month delay in seeking arbitration unreasonable]; *Augusta*, *supra*, 193 Cal.App.4th at pp. 338-339 [six and one-half months between filing lawsuit and motion to compel arbitration]; *Adolph*, *supra*, 184 Cal.App.4th at pp. 1449, 1451-1452 [six months between filing lawsuit and demand for arbitration]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 556 (*Guess?*) [less than four months between filing lawsuit and motion to compel arbitration].)

Market Street argues "much of the delay was in its efforts to work with [the Alexanders] to this end [arbitration]." The record does not support Market Street's argument. There is no indication why Market Street waited four months after the complaint was filed and three months after it filed its answer to send a letter discussing arbitration. Moreover, the letter, by itself, was not necessarily sufficient to invoke the right to arbitrate. "Mere announcement of the right to compel arbitration is not enough.

16

To properly invoke the right to arbitrate, a party must . . . timely raise the defense and take affirmative steps to implement the process." (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 997; *Davis*, *supra*, 59 Cal.App.4th at p. 217.)

In addition, Market Street does not explain why it took an additional three months to petition the court to compel arbitration after it was clear the Alexanders were not amenable to arbitration. In a declaration filed in support of the petition, Market Street's counsel claimed that she had been working with the Alexanders' counsel to set up mediation since the case management conference. However, it is unclear if the superior court found this explanation credible because there is no transcript of the hearing and the court's minute order does not address this evidence. Indeed, the superior court's discussion of waiver in the minute order implies that the court was not impressed by any of Market Street's justifications for the delay: "[Market Street's] delay of over six months constitutes a waiver of its ability to compel arbitration." Again, we do not have the benefit of the transcript of the hearing to arrive at any other conclusion. (Cf. *Nielsen v. Gibson*, *supra*, 178 Cal.App.4th at pp. 324-325; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

As explained in *Burton*, "a party's unreasonable delay in demanding or seeking arbitration, in and of itself, may constitute a waiver of a right to arbitrate." (*Burton*, *supra*, 190 Cal.App.4th at p. 945.) Here, based on the limited record before us, we conclude the superior court was unimpressed with Market Street's explanation for its delay in seeking arbitration. We therefore agree that the delay was unreasonable, and, on this ground alone, we affirm the court's order.

17

## *2. Steps Inconsistent with an Intent to Arbitrate*

The court also found Market Street had taken steps inconsistent with an intent to arbitrate: "During this time [over sixth-month delay], [Market Street] conducted discovery and actively litigated this action. These actions . . . are inconsistent with an intent to invoke arbitration." Market Street disagrees, arguing that the taking of discovery alone cannot waive the right to arbitrate. In addition, it claims it was permitted to conduct such discovery under Code of Civil Procedure[3] section 1283.05 and the arbitration provision in the Agreement. We disagree.

Ordinarily, discovery is not available in aid of arbitration, except as provided in section 1283.05, due to the expedited nature of such a proceeding. Where a defendant engages in extensive discovery from plaintiff before moving to compel arbitration, the trial court may properly find that defendant waived arbitration. (*Davis*, *supra*, 59 Cal.App.4th at p. 214; *Guess?*, *supra*, 79 Cal.App.4th at p. 558.)

Here, Market Street argues it was entitled to the same discovery in arbitration as it was in superior court. To support its position, Market Street refers to the arbitration provision in the Agreement: "The parties shall be allowed to conduct relevant discovery as is allowed under the California Code of Civil Procedure in arbitration matters and as further allowed under the National Rules for the Resolution of Employment Disputes." Section 1283.05 addresses a party's right to discovery in arbitration. It allows for fairly robust discovery consistent with discovery in cases pending before the superior court (see

---

3    Statutory references are to the Code of Civil Procedure unless otherwise specified.

18

§ 1283.05, subd. (a)) subject to the arbitrator granting leave to take depositions (see § 1283.05, subd. (e)).  However, discovery in arbitration is curtailed by section 1283.1: "To the extent provided in Section 1283.1 depositions may be taken and discovery obtained in arbitration proceedings as follows:  . . ."  (§ 1283.05.)

Section 1283.1 provides:

> "(a) All of the provisions of Section 1283.05 shall be conclusively deemed to be incorporated into, made a part of, and shall be applicable to, every agreement to arbitrate any dispute, controversy, or issue arising out of or resulting from any injury to, or death of, a person caused by the wrongful act or neglect of another.

> "(b) Only if the parties by their agreement so provide, may the provisions of Section 1283.05 be incorporated into, made a part of, or made applicable to, any other arbitration agreement."

Thus, if the matter in dispute is a personal injury case, the parties may conduct discovery pursuant to section 1283.05.  The instant matter is not a personal injury case; therefore, subdivision (b) applies.  So the provisions of section 1283.05 apply if the Agreement here specifies as such.

The Agreement only states that the parties "shall be allowed to conduct relevant discovery as is allowed under the California Code of Civil Procedure in arbitration matters . . . ."  It does not specifically reference section 1283.05.  Accordingly, the parties may only conduct discovery as allowed by the code in arbitration proceedings.  Here, it is not clear the parties intended to agree to discovery under section 1283.05 without regard to section 1283.1.  At best, the Agreement is ambiguous as to this issue.

Market Street does not focus on the actual language regarding discovery in the Agreement.  Nor does it explain how the language should be interpreted or point to any

19

extrinsic evidence that may be helpful in interpreting the Agreement to allow expansive discovery. Our review of the record did not uncover any evidence offered by any of the parties to interpret the scope of discovery permitted under the arbitration clause. Because of the lack of any conflict of extrinsic evidence, we review the interpretation of the Agreement de novo. (*Morgan v. City of Los Angeles Bd. of Pension Comrs.* (2000) 85 Cal.App.4th 836, 843.)

Here, the minute order indicates the superior court did not agree with Market Street that the Agreement allowed broad discovery under section 1283.05, subdivision (a). Instead, the court found that the scope of discovery was at the arbitrator's discretion. We see nothing in the language of the subject arbitration clause that leads us to believe the superior court incorrectly interpreted the Agreement. Indeed, our independent interpretation of the Agreement yields the same results. The Agreement merely references the Code of Civil Procedure discovery mechanisms for arbitration in general without a specific reference to agreeing to use discovery under section 1283.05, subdivision (a). Accordingly, we do not interpret the Agreement as allowing for broad discovery. To the extent discovery would be permitted in an arbitration of the instant matter, it must be conducted under the National Rules for the Resolution of Employment Disputes as set forth in the Agreement. Market Street offers no argument regarding the scope of discovery under these rules.

Based on our interpretation of the scope of discovery under the arbitration clause in the Agreement, we are satisfied that substantial evidence supports the superior court's finding that Market Street's extensive use of discovery that may not have been permitted

20

in arbitration was inconsistent with an intent to invoke arbitration. (See *Davis*, *supra*, 59 Cal.App.4th at p. 214; *Guess?*, *supra*, 79 Cal.App.4th at p. 558.)

### 3. *Prejudice*

Substantial evidence also supports the trial court's finding of prejudice. "In California, whether or not litigation results in prejudice . . . is critical in waiver determinations." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.) Prejudice does not occur by a party's mere participation in litigation. (*Ibid.*) Nor does it result simply because " 'the party opposing arbitration shows . . . it incurred court costs and legal expenses.' " (*Lewis*, *supra*, 205 Cal.App.4th at p. 452.) But prejudice can be shown where a delayed arbitration request deprived the party opposing arbitration "of the benefits available through arbitration, including a speedy resolution of the dispute." (*Burton*, *supra*, 190 Cal.App.4th at p. 949.) And prejudice can be shown where a party seeking arbitration used discovery to gain information about the other side's case that would not have been available in arbitration, or caused the other side to reveal trial tactics or legal strategies. (*Berman, supra,* 80 Cal.App.4th 1359, 1366.)

Here, the superior court found that the Alexanders had been prejudiced because they have "revealed litigation strategies and impressions." In addition, the court observed that the Alexanders had "incurred costs in responding to discovery that might not otherwise have been incurred." Market Street does not specifically address these two findings by the court. Instead, it merely concludes that substantial evidence does not support a finding of prejudice.

21

Market Street's argument in its petition to the superior court that the Alexanders had not been prejudiced was cursory. It did not cite to any evidence. In their opposition to the petition, the Alexanders submitted a declaration from their attorney describing the significant written discovery Market Street propounded and served on the Alexanders. This discovery included form interrogatories, employment form interrogatories, 81 special interrogatories, 15 requests for admission, and 35 requests for production served on each plaintiff. The Alexanders produced 698 pages of documents. And Market Street took the deposition of the Alexanders.

The declaration also indicated that Market Street had not adequately responded to written discovery propounded on it and did not produce any documents. Based on Market Street's conduct in discovery, the Alexanders maintained that they were prejudiced because Market Street petitioned the court to compel arbitration only after it completed discovery it would not otherwise be entitled to in arbitration while not adequately responding to the Alexanders' discovery. Further, the declaration indicates the number of hours the Alexanders' attorney has worked on this matter, including responding to discovery.

Finally, the Alexanders claimed they were prejudiced because they were deprived of the efficiencies available through arbitration.

Market Street did not file a reply in support of its petition to compel arbitration. It does not address any of the Alexanders' claims of prejudice in its opening brief. And, once again, Market Street's position is undermined by the absence of a transcript of the hearing of the record. We have no way of knowing what arguments regarding prejudice

22

Market Street made at the hearing or if it presented evidence on this issue. We thus are left only with the pleadings and evidence filed with the superior court to analyze this substantial evidence issue.

We see no error on the face of the record and as such we presume the order is correct on all evidentiary matters. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) Moreover, the evidence submitted by the Alexanders (specifically the large amount of written discovery propounded by Market Street; the fact the Alexanders were deposed; the amount of time the Alexanders' counsel devoted to litigating this case in superior court; Market Street's failure to adequately respond to written discovery; and Market Street filing a petition to compel arbitration only after it completed discovery it might not have been permitted to obtain in arbitration) is sufficient to support the court's finding of prejudice.

### 4. Conclusion

In summary, the record before us does not establish a lack of waiver as a matter of law. (See *Adolph*, *supra*, 184 Cal.App.4th at p. 1450.) We are satisfied substantial evidence supports the court's finding of waiver.

DISPOSITION

The order is affirmed.  The Alexanders are awarded their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.