Filed 5/24/16 Nunez v. Autumn Hills Operating Co. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUTH NUNEZ, | B261229 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC517056) |
| v. | |
| AUTUMN HILLS OPERATING COMPANY, LLC, et. al, | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, John L. Segal, Judge. Affirmed.

Jackson Lewis, Bradley W. Kampas, Sherry L. Swieca, and William E. Weiner for Defendants and Appellants.

Tafoya & Garcia, Robert N. Tafoya and David A. Garcia for Plaintiff and Respondent.

_____

**INTRODUCTION**

Defendants Autumn Hills Operating, LLC and Autumn Hills Health Care Center (collectively, Autumn Hills or the company) appeal from the trial court's denial of the company's motion to compel arbitration of plaintiff Ruth Nunez's claims for, among other things, discrimination, retaliation, and failure to accommodate under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). The court found Autumn Hills unreasonably delayed pursuing arbitration by waiting more than 14 months after Nunez filed her lawsuit to seek an order compelling arbitration of her claims. The court also found Nunez would be prejudiced if compelled to arbitrate her claims because the delay had deprived her of the benefits of arbitration—a speedy, efficient, and cost-effective means of resolving disputes. We affirm.

**FACTUAL AND PROCEDURAL SUMMARY**

**1.      Nunez's Employment with Autumn Hills**

Autumn Hills hired Nunez as a certified nurse assistant in April 1996. After Nunez began working for Autumn Hills, the company implemented an employment dispute resolution program (EDR Program or the program).[1] The program established a four-step process to resolve employment-related disputes between Autumn Hills and its employees, the final step of which is binding arbitration before a neutral third party. On August 17, 2004, Nunez signed an acknowledgment of receipt of the program's booklet (the acknowledgment), which set forth the program's material terms, including the four-step dispute resolution process.[2]

---

[1]      The EDR Program was created by Mariner Health Care, of which Autumn Hills is a subsidiary. According to the EDR Program's information booklet, Mariner Health Care is not an employer, but its subsidiaries are employers. Accordingly, the EDR Program is implemented by Mariner Health Care's subsidiaries.

[2]      The program's booklet provides in relevant part: "Your decision to accept employment or to continue employment with [Autumn Hills] constitutes your agreement to be bound by the EDR Program. Likewise, [Autumn Hills] agrees to be bound by the EDR Program. This mutual agreement to arbitrate claims means that both

After signing the acknowledgment, Nunez twice injured herself on the job: first in 2007, and again in 2011. In 2007, Nunez injured her knee while carrying a patient. She underwent surgery and returned to work with disability restrictions imposed by her doctor that were intended to limit the amount of physically demanding tasks she could perform. However, Autumn Hills often refused to acknowledge her restrictions, which she claimed caused her to injure her lower back in 2011. As a result of her back injury, Nunez took two weeks of disability leave in 2012. When she returned to work with new disability restrictions, Autumn Hills continued to assign her physically demanding jobs. When Nunez complained to Autumn Hills' disability administrator about the company's failure to acknowledge her restrictions, the administrator made derogatory remarks about her age (Nunez was 60 years old at the time), telling her that people her age sometimes experience physical pain and discomfort and that perhaps she should look for another job. In May 2012, Autumn Hills terminated Nunez's employment.

### 2. Nunez's Lawsuit

On August 2, 2013, Nunez filed a lawsuit against Autumn Hills alleging nine causes of action arising out of the termination of her employment, including claims of discrimination, retaliation, and failure to accommodate under FEHA. The next month, Nunez filed a first amended complaint, which she served Autumn Hills with on September 10, 2013. Around the same time, Nunez also propounded discovery requests on Autumn Hills, including special and form interrogatories, requests for admissions,

---

you and [Autumn Hills] are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program. However, no remedies that otherwise would be available to you or [Autumn Hills] in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program."

With respect to the type of disputes covered by the EDR Program, the booklet provides: "[T]he EDR Program will become the process for resolving most workplace disputes between you and [Autumn Hills], including, but not limited to, disputes concerning legally protected rights such as freedom from discrimination, retaliation or harassment."

and document requests, and she scheduled depositions of several of Autumn Hills' employees.

On September 18, 2013, counsel for Autumn Hills informed counsel for Nunez that the company believed it was in possession of an arbitration agreement signed by Nunez. However, it could not locate the agreement. Nevertheless, counsel for Autumn Hills asked Nunez if she would agree to submit her claims to arbitration. Nunez refused to do so until Autumn Hills produced a signed arbitration agreement.

On October 23, 2013, Autumn Hills filed its answer to Nunez's complaint. As an affirmative defense, Autumn Hills asserted that Nunez's entire lawsuit was barred by "a valid and enforceable employment dispute resolution agreement," which required all of Nunez's claims to be submitted to binding arbitration.

Despite notifying Nunez of its intent to arbitrate and asserting in its answer that Nunez's claims were barred by a binding arbitration agreement, Autumn Hills did not seek to compel arbitration of Nunez's lawsuit until more than a year after it filed its answer, or more than 14 months after Nunez commenced her lawsuit. During that period, Autumn Hills continued to engage in litigation with Nunez, participating in mediation sessions and propounding, and responding to, discovery requests. For example, shortly after filing its answer, Autumn Hills responded to over 100 of Nunez's individual discovery requests and, in December 2013, served Kaiser Permanente with a subpoena requesting production of Nunez's medical records.

On September 30, 2014, Autumn Hills located Nunez's signed acknowledgment of the EDR Program, but it never found a separate arbitration agreement signed by Nunez. On October 1, 2014, Autumn Hills again approached Nunez about submitting her claims to arbitration, but she continued to refuse to do so. On October 3, 2014, Autumn Hills took Nunez's deposition.

### 3.   Proceedings to Compel Arbitration

On October 28, 2014, Autumn Hills filed an ex-parte application for an order specially setting a hearing on its motion to compel arbitration and for a stay of judicial proceedings, which the trial court denied. About one week later, Autumn Hills filed

4

a regularly-noticed motion to compel arbitration. The court set a hearing on the motion for January 7, 2015.

In its motion, Autumn Hills explained why it waited more than a year after Nunez filed her lawsuit to seek an order compelling arbitration. When it filed its answer in September 2013, Autumn Hills mistakenly believed Nunez had signed a separate arbitration agreement, which all employees who began working for Autumn Hills after it implemented the EDR Program were required to sign. The company did not realize, however, that Nunez never signed a separate agreement because she was already employed at the time the EDR Program was implemented. The company also did not realize that it had on file Nunez's signed acknowledgment of the EDR Program that she had signed in August 2004. Autumn Hills then spent more than a year searching for a document that Nunez had never signed. Autumn Hills claimed it took more than a year to discover that Nunez had signed only an acknowledgment of the EDR Program, and not a separate arbitration agreement, because most of its employees who were responsible for document processing and storage when Nunez signed the acknowledgment no longer worked for the company. Autumn Hills also blamed Nunez for the delay, claiming she perpetuated it by failing to inform Autumn Hills that she had signed the acknowledgment, and not a separate arbitration agreement.

On November 24, 2014, Autumn Hills filed a motion for summary judgment. On December 22, 2014, Nunez filed an opposition to Autumn Hills' motion to compel arbitration. In her opposition to the motion to compel, Nunez argued, among other things, that Autumn Hills waived its right to arbitrate her claims under the acknowledgment by waiting more than a year after she filed her lawsuit to seek an order compelling arbitration. On January 7, 2015, Nunez filed her opposition to Autumn Hills' motion for summary judgment.[3]

---

[3] Autumn Hills' motion for summary judgment and Nunez's opposition to that motion are not included in the record. Accordingly, we are unable to determine upon what grounds Autumn Hills moved for summary judgment. Specifically, we are unable

The same day Nunez filed her summary judgment opposition, January 7, 2015, the court held a hearing on Autumn Hills' motion to compel. At the time the court heard the motion, trial was set for March 2, 2015. The court denied the motion, finding Autumn Hills waived its right to arbitrate Nunez's claims. Specifically, the court found Autumn Hills unreasonably delayed in pursuing arbitration by waiting more than a year after Nunez commenced her lawsuit to file its motion. According to the court, Autumn Hills, and not Nunez, was responsible for the company's delay in pursuing arbitration because all of the necessary agreements and documents were in Autumn Hills's possession, and the company should have been aware of which of its employees signed acknowledgments of the EDR Program, and which ones signed separate arbitration agreements. The court also found Autumn Hills acted inconsistently with its right to arbitrate Nunez's claims by engaging in extensive discovery and participating in mediation sessions. Finally, the court found Nunez would be prejudiced if ordered to arbitrate her claims because Autumn Hills' delay had deprived Nunez of the advantages of arbitration, namely "an expedient, efficient and cost-effective method to resolve disputes."

Autumn Hills filed a timely appeal.

## DISCUSSION

### I.     Applicable Law and Standard of Review

A trial court may deny a motion to compel arbitration if it finds the moving party waived the right to arbitrate the parties' disputes. (Code Civ. Proc., § 1281.2, subd. (a).) However, "[s]tate law, like the [Federal Arbitration Act], reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).)  "Although a court may deny a petition to compel arbitration on the ground

_____

to determine whether Autumn Hills sought summary judgment solely on the grounds that Nunez was required to submit her claims to arbitration, or whether Autumn Hills also sought summary judgment on the merits of Nunez's claims. Apparently, the motion for summary judgment was taken off calendar on January 21, 2015.

6

of waiver [citation], waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*Ibid.*)

In determining whether a party has waived its right to arbitrate a dispute, courts look to the following factors, none of which are dispositive, and some of which may not be relevant in every case: " ' "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' [Citations.]" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196, alteration to text in original.)

A finding of waiver does not require intentional conduct by the party seeking to compel arbitration; rather, "a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944 (*Burton*).) In this sense, "waiver is more like a forfeiture arising from the nonperformance of a required act." (*Ibid.*; see also *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 12 (*Zamora*) [waiver can mean "the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right"].)

"[W]hether or not litigation results in prejudice . . . is critical in waiver determinations . . . ." (*Zamora*, *supra*, 186 Cal.App.4th at p. 16.) "[P]rejudice is typically found where 'the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.' [Citation.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 947, second and third alterations to text in original.) Thus, a party's delay in pursuing arbitration, while the party continues

7

to participate in the litigation process, can by itself result in prejudice if it substantially deprives the party opposing arbitration of the advantages of arbitration, such as a speedy and relatively inexpensive means of dispute resolution. (*Id*. at p. 948.)

" 'Although the burden of proof is heavy on the party seeking to establish waiver, . . . a determination by a trial court that the right to compel arbitration has been waived ordinarily involves a question of fact, which is binding on the appellate court if supported by substantial evidence. The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver.' [Citation.]" (*Burton*, *supra*, 190 Cal.App.4th at p. 946.) In other words, "we review waiver as a factual inquiry for the trial court, and will affirm if substantial evidence supports the trial court's determination. [Citation.] We construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Ibid*.) Even when the facts are undisputed, "[i]f more than one reasonable inference may be drawn from undisputed facts, the substantial evidence rule requires indulging the inferences favorable to the trial court's judgment." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211.)

## II.     Substantial Evidence Supports the Trial Court's Finding of Prejudice

In denying Autumn Hills' motion, the court found Nunez would be prejudiced if ordered to arbitrate her claims because the company's 14-month delay in filing its motion had deprived her of the advantages of arbitration. We address first why the court's finding of prejudice is supported by substantial evidence and then turn to Autumn Hills' specific challenges to the court's ruling.[4]

Here, Autumn Hills' delay was so lengthy that it deprived Nunez of virtually all of the benefits of arbitration. (See *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 634 [an efficient, streamlined process is arbitration's "fundamental attribute"].) As

---

[4]     Autumn Hills limits its discussion on appeal to the issue of prejudice; it does not challenge the court's findings that the company unreasonably delayed in pursuing arbitration or that its conduct was inconsistent with an intent to arbitrate. Accordingly, we limit our analysis to the issue of prejudice.

8

a result of Autumn Hills' 14-month delay, the parties engaged in extensive discovery, which was nearly complete by the time Autumn Hills' motion was heard less than two months before trial was set to commence. Not only did the parties propound document requests and general and special interrogatories, they also deposed several witnesses. Most importantly, Autumn Hills deposed Nunez before it filed its motion to compel arbitration. While the company may not have made a calculated decision to wait until after deposing Nunez to file its motion to compel, the fact that it did wait to file its motion until after deposing Nunez supports a finding of prejudice. Specifically, by deposing Nunez, Autumn Hills was able to gauge her strengths and weaknesses as a witness. Thus, Autumn Hills was able to obtain an unfair advantage over Nunez by invoking the litigation machinery to help inform its decision whether to pursue arbitration or a jury trial. (See *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 (*Guess?*) [the courtroom may not be used as a staging area for arbitration].)

We note that throughout its briefs and at oral argument, Autumn Hills has repeatedly argued that the parties did not engage in any discovery that would not be available in arbitration, and that, as a result, Nunez was not prejudiced by Autumn Hills' delay in pursuing arbitration. However, Autumn Hills has never cited to, or otherwise discussed, the specific rules governing discovery in the arbitration forum chosen by the parties. In any event, we are not as confident as Autumn Hills that the parties necessarily would be entitled to the same discovery in arbitration as that which has already been conducted in the trial court. Indeed, a document entitled "Employment Dispute Resolution Program Rules," which appears to be part of the packet of information Nunez received describing the EDR Program, provides as follows with respect to the scope of discovery available in arbitration: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." While it appears that the same type of discovery could be available in arbitration, the rules grant the arbitrator discretion to limit the scope of discovery. Accordingly, it is

9

not certain that the parties would have been able to engage in the same discovery that has already been conducted in the litigation.

Autumn Hills' filing of a motion for summary judgment also contributed to Nunez's prejudice. As the court explained in its written ruling, Nunez was required to prepare an opposition to Autumn Hills' motion for summary judgment before the court could rule on the company's motion to compel arbitration. As a result, Nunez likely had to disclose at least some of her litigation strategy before the decision of whether to send her claims to arbitration could be made, a factor that weighs in favor of finding prejudice.[5] (See *Guess?, supra*, 79 Cal.App.4th at p. 558; see also *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 450.)

Autumn Hills contends the trial court erred in denying its motion to compel because Nunez failed to present any evidence of how she would be prejudiced if ordered to arbitrate her claims. Specifically, Autumn Hills contends the court erred in finding prejudice based solely on the company's delay in pursuing arbitration and Nunez's expenditure of litigation costs. We disagree. As noted, a party's delay in pursuing arbitration, by itself, can result in prejudice if the delay is so lengthy that the party opposing arbitration is deprived of the benefits of arbitration. (*Burton*, *supra*,

---

[5] As noted, because we were not provided with Autumn Hills' motion for summary judgment or Nunez's opposition, we cannot review what grounds Autumn Hills sought to dispose of Nunez's claims. However, the absence of those documents from the appellate record must be weighed against Autumn Hills, the appellant. It is well-settled that the party challenging the trial court's ruling must supply the reviewing court with all documents that the trial court relied on in reaching its decision. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) If all such documents are not included in the record on appeal, it will be presumed that those documents support the trial court's ruling. (*Ibid*.; see also *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955.) In finding Nunez would be prejudiced by ordering her claims to arbitration, the trial court relied on the fact that Autumn Hills filed a motion for summary judgment, and that Nunez responded to that motion, before the court could issue its ruling on Autumn Hills' motion to compel. Because Autumn Hills has not included those documents in the record on appeal, we must presume they support the court's finding that Nunez would be prejudiced if ordered to arbitrate her claims. (*Foust, supra*, 198 Cal.App.4th at p. 187.)

10

190 Cal.App.4th at p. 948; see also *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 995 [in determining prejudice, courts may consider the length of the delay and the expense incurred by the opposing party in participating in litigation]; *Burton*, *supra*, 190 Cal.App.4th at p. 948 ["Arbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel"].)  Indeed, courts have found prejudice in similar circumstances, some of which involved much shorter delays than the 14 months Autumn Hills waited to pursue an order compelling arbitration.  (See e.g., *Guess?, supra*, 79 Cal.App.4th at pp. 555-559 [right to arbitrate waived where motion to compel arbitration was filed four months after lawsuit was filed and moving party engaged in extensive discovery before pursuing order compelling arbitration]; *Burton*, *supra*, 190 Cal.App.4th at p. 946-951 [arbitration waived where defendant waited 11 months after lawsuit was filed to pursue an order compelling arbitration]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 [arbitration waived where motion to compel was filed less than six months after lawsuit was filed and moving party gained insight into opposing party's litigation strategies by waiting until after opposing party filed its answer]; *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.* (11 Cir. 1990) 906 F.2d 1507, 1514 [arbitration waived where moving party waited eight months after lawsuit was filed, engaged in discovery, and filed dispositive motions before pursuing an order compelling arbitration].)

We acknowledge that our colleagues in Division Eight recently held in *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, a case not cited by either party, that the defendants' 14-month delay in pursuing arbitration did not prejudice the plaintiff.  However, the facts in *Khalatian* are distinguishable from the facts in this case.  For instance, in finding the defendants' delay did not prejudice the plaintiff, the court in *Khalatian* relied on the fact that trial was set more than a year after the date the defendants filed their motion to compel.  (*Id*. at p. 662.)  Here, on the other hand, trial was set to commence less than six months after Autumn Hills filed its motion, and less than two months after the earliest date the company could secure for a hearing on its

11

motion.  In addition, the parties in *Khalatian* engaged in limited discovery and did not depose the plaintiff, or file any motion that required the plaintiff to disclose its litigation strategy.  (*Id*. at pp. 660-662.)  That was not the case here.  Autumn Hills and Nunez participated in significant written discovery, including non-party discovery aimed at obtaining Nunez's medical records.  The parties also conducted several depositions: Nunez deposed three witnesses and Autumn Hills deposed Nunez.  Further, Autumn Hills filed a motion for summary judgment, which Nunez had to respond to before Autumn Hills' motion to compel was heard.

Autumn Hills also contends the court erred in finding it waived its right to arbitrate Nunez's claims even though the company did not engage in "misfeasance or gamesmanship" when it delayed pursuing an order to compel arbitration.  Essentially, Autumn Hills argues delay cannot constitute prejudice where the party seeking to compel arbitration also has not engaged in some sharp practice.  Again, we disagree.  It is well-established that under the test set forth in *St. Agnes*, courts do not consider whether the party pursuing arbitration knew about the underlying agreement during the period it was dilatory in pursuing an order to compel arbitration.  (*Zamora*, *supra*, 186 Cal.App.4th at pp. 21-22.)  Accordingly, a party may waive its right to arbitrate simply by delaying for an unreasonable period of time before filing a motion to compel arbitration, if that delay deprives the other party of the benefits of arbitration.  (See *id.* at p. 19 ["[i]t does not matter that [defendants] may have acted in good faith" during the period of delay].)

Finally, in its reply brief, Autumn Hills argues the trial court's ruling is erroneous under the United States Supreme Court's recent decision in *DIRECTV, Inc. v. Imburgia* (2015) 136 S.Ct. 463 (*Imburgia*), which was decided after the trial court

denied Autumn Hills' motion to compel arbitration.[6]  Autumn Hills' reliance on *Imburgia* is misplaced.

In *Imburgia*, the Supreme Court reversed a decision out of this district that held that an arbitration agreement's class action waiver was unenforceable in light of the rule established in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*). (*Imburgia*, *supra*, 136 S.Ct. at pp. 466-471.)  At issue in *Imburgia* was an arbitration agreement that included a waiver of a class-arbitration provision providing in pertinent part, "if the 'law of your state' makes the waiver of class arbitration unenforceable, then the entire arbitration provision 'is unenforceable.' " (*Id*. at p. 466.)  Although the lower court recognized the Federal Arbitration Act preempted the rule established in *Discover Bank* rendering such provisions unenforceable under California law, it nevertheless applied the rule, reasoning that despite the rule being federally preempted, it was part of the law of California and, as such, rendered the arbitration agreement unenforceable under the agreement's terms.  (*Id*. at p. 467.)

In reversing the Court of Appeal's decision, the United States Supreme Court observed that when deciding a motion to compel arbitration, courts must place "arbitration contracts 'on equal footing with all other contracts.'  [Citation.]" (*Imburgia*, *supra*, 136 S.Ct. at p. 468.)  In other words, a court's decision to deny a motion to compel must rest upon " 'grounds as exist at law or in equity for the revocation of any contract.'  [Citation.]" (*Ibid*.)  The court held that by applying preempted, or invalid, California law to affirm the denial of the defendant's motion to compel arbitration, the lower court did not place the subject arbitration agreement on equal footing with all other contracts.  (*Id*. at pp. 469-471.)

Autumn Hills argues that under *Imburgia*, the trial court erred in denying its motion to compel arbitration because the court did not place the parties' agreement to

---

[6]  Autumn Hills did not raise this argument in its opening brief because *Imburgia* was decided after that brief was filed.  Accordingly, we allowed Nunez to file a supplemental brief responding to Autumn Hills' argument.

arbitrate on equal footing with all other types of contracts. That is, Autumn Hills contends the court erred in finding it waived its right to arbitrate when it did not engage in any deliberate act inconsistent with its right to arbitrate. According to Autumn Hills, the court should have required Nunez to present evidence that Autumn Hills deliberately delayed seeking arbitration for strategic or tactical reasons. As already discussed, the intent of the party who has delayed its pursuit of arbitration is of no moment in determining waiver. (See *Zamora*, *supra*, 186 Cal.App.4th at pp. 19, 21-22.) *Imburgia* does not compel a different rule of law. In *Imburgia*, the Supreme Court addressed only the specific situation in which a lower court applies invalid law to deny a motion to compel arbitration. That case did not address the situation at issue here, namely the application of well-established, valid law in the context of motions to compel arbitration. Simply because the analysis specific to the issue of whether a party has waived its right to enforce an arbitration clause may differ from the analysis of whether a party has waived its right to enforce a different type of contractual provision does not mean, as Autumn Hills contends, that courts are placing arbitration agreements on unequal footing.

14

**DISPOSITION**

The trial court's order denying Autumn Hills' motion to compel arbitration is affirmed. Nunez shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

ALDRICH, Acting P. J.

HOGUE, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.